# IN THE SUPREME COURT OF IOWA

No. 10–0418

Filed January 27, 2012

**STATE OF IOWA,**

Appellee,

vs.

**JERIN DOUGLAS MOOTZ,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Douglas C. McDonald, Judge.

Appellant seeks further review from the court of appeals decision affirming his conviction for assault on a police officer resulting in bodily injury. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Leslie Behaunek, Student Legal Intern, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney General, Michael J. Walton, County Attorney, and Dion D. Trowers, Assistant County Attorney, for appellee.

**ZAGER, Justice**.

Defendant Jerin Mootz appeals his conviction for assault on a police officer resulting in bodily injury in violation of Iowa Code section 708.3A (2009). During voir dire, Mootz sought to use a peremptory challenge to remove a Hispanic juror. The district court found Mootz was using his strikes in a racially discriminatory manner, denied the strike, and seated the juror. Mootz was convicted and appealed. We transferred the case to the court of appeals. The court of appeals found the district court erred in refusing to allow the strike of the potential juror, but Mootz had not shown that the error prejudiced him, and affirmed the conviction. We granted further review. For the reasons set forth below, we reverse the decision of the district court and remand for a new trial.

## I.  Factual Background and Procedural History.

On June 6, 2009, shortly before midnight, Davenport police officer Epigmenio Canas, who is Hispanic, was dispatched to a disturbance at a bar. As he entered the parking lot of the bar, he saw a large number of people pushing and screaming at each other. Canas was in uniform and driving a marked squad car. As Canas attempted to arrest one of the male instigators, a female, later identified as Tamara Mootz, the defendant's wife, pushed Canas. As Canas was dealing with her, the defendant, Jerin Mootz, ran towards Canas and punched him in the side of the face with a closed fist. A struggle ensued and the two went to the ground. Canas ultimately gained control over Mootz after several punches were exchanged.

Mootz was charged by trial information with assault on a police officer resulting in bodily injury in violation of Iowa Code section 708.3A. Trial commenced on February 8, 2010. Mootz waived reporting of voir dire.

Based on the subsequent record, however, we are able to determine that prior to the attorneys' exercise of their peremptory strikes, the court advised the parties that it had observed three minorities on the jury panel, two of whom were Hispanic males.[1] The court advised counsel that only one of the minority jurors, Alexander Ramirez, was "strikable." Ramirez was strikable because of his relationship to area law enforcement and a medical issue he needed to attend to that day. Mootz struck Ramirez from the jury panel. Mootz attempted to strike Andrew Garcia, a Hispanic male, who in the district court's view at the time, was the only other Hispanic juror.

Subsequently, the court, sua sponte, conducted a hearing in chambers and asked the State if it objected to Mootz striking Garcia. The State indicated it objected to the peremptory strike stating there was no "relevant reason for him being stricken." In response to the objection to his strike, Mootz stated he did not have to give a reason. However, if he did have to provide a reason, he was striking Garcia because Garcia was a former bartender who claimed he knew about intoxication and because Garcia stated he had been previously arrested and thought he deserved it.

The court concluded that the reasons offered by Mootz were insufficient to challenge him. The court went on to state, "[W]e have a police officer who is Hispanic and we make it a point to make sure that minorities are treated fairly like everyone else on our jury panel and I think that's important and that applies to both the Defendant and the State." The court did not allow Mootz to strike Garcia, instructed

---

[1]There were, in fact, four minorities on the panel, three of whom were Hispanic. The third Hispanic juror, Renee Ott, was not counted by the district court as Hispanic, even though she listed her ethnic origin as Hispanic on her interview sheet. This is because "she didn't have a Hispanic name."

counsel to strike somebody else, and Garcia was sworn and served as a juror.

After the State called two witnesses, but before the jury returned from lunch, Mootz moved for a mistrial. Mootz claimed that he was denied his absolute right to strike any of the proposed jurors and that by allowing Garcia to sit on the jury, the court had denied Mootz his Sixth Amendment right to a fair trial. This motion was denied by the district court citing the fact that the victim was Hispanic and that "it's fair that we have a proper mixture of backgrounds on the jury."

The jury, including Garcia, found Mootz guilty. On February 17, Mootz filed a motion for a new trial, again stating he was improperly denied his use of a peremptory strike against Garcia. Attached to his motion, Mootz submitted the juror interview sheet identifying Ott as another Hispanic juror whom he did not attempt to strike. Mootz claimed that no prima facie case had been made showing he exercised his challenges in a racially discriminatory manner, that he had offered a race-neutral explanation for his strike, and that there had been no showing that his reasons were merely pretextual. Mootz sought a new trial on the grounds that he had been denied "his statutory right to a peremptory challenge and a fair trial." The court denied the motion on February 24 and sentenced Mootz to an indeterminate term not to exceed two years in prison and a fine of $1500. Mootz timely filed a notice of appeal on March 15, 2010.

The court of appeals, in a split decision, affirmed Mootz's conviction. Citing *State v. Neuendorf*, 509 N.W.2d 743 (Iowa 1993), and *Rivera v. Illinois*, 556 U.S. 148, 129 S. Ct. 1446, 173 L. Ed. 2d 320 (2009), the majority held that, while the district court erred in denying Mootz's peremptory challenge, Mootz was not entitled to a reversal of his

conviction because he had failed to show that the trial court's error resulted in prejudice. The dissent argued that because the jury that determined Mootz's guilt improperly included a juror Mootz was denied the right to strike, prejudice should be presumed, Mootz's conviction reversed, and the case remanded for a new trial. We granted further review.

## II.  Standard of Review.

Interpretations of the Iowa Rules of Criminal Procedure are reviewed for corrections of errors at law. *State v. Bruce*, 795 N.W.2d 1, 2 (Iowa 2011). To the extent our review implicates any constitutional claims, our review is de novo. *State v. Veal*, 564 N.W.2d 797, 806 (Iowa 1997), *overruled in part on other grounds by State v. Hallum*, 585 N.W.2d 249, 253 (Iowa 1998), *vacated on other grounds*, 527 U.S. 1001, 119 S. Ct. 2335, 144 L. Ed. 2d 233 (1999). In cases where the prosecution has been accused of using strikes to engage in purposeful racial discrimination, we have given a great deal of deference to the district court's evaluation of credibility when determining the true motives of the attorney when making strikes. *See id.* at 807. We will give the district court's evaluation of a defense attorney's credibility and motives the same level of deference.

## III.  Discussion.

The district court did not allow Mootz to strike a second Hispanic juror, even after Mootz offered a racially neutral explanation for the strike. Our task on appeal is twofold. First, we must determine whether the district court erred when it denied Mootz a peremptory challenge on the basis that he was using the strike to engage in purposeful racial discrimination. Second, if we determine the court's ruling was in error, we must determine the appropriate remedy.

**A. The Allegation that Mootz Used His Strikes to Engage in Purposeful Discrimination on the Basis of Race.** A defendant violates the Fourteenth Amendment equal protection rights of a juror when he uses his peremptory challenges, or strikes, to engage in purposeful, racially motivated discrimination. *Georgia v. McCollum*, 505 U.S. 42, 48, 59, 112 S. Ct. 2348, 2353, 2359, 120 L. Ed. 2d 33, 44, 51 (1992). In *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the Supreme Court held that a prosecutor could not use his peremptory challenges to engage in purposeful racial discrimination. *Batson*, 476 U.S. at 100, 106 S. Ct. at 1725, 90 L. Ed. 2d at 90. A challenge to the defendant's use of strikes based on purposeful racial discrimination is known as a "reverse-*Batson* challenge." *United States v. Thompson*, 528 F.3d 110, 115 (2d Cir. 2008). In addition to protecting the equal protection rights of jurors, the *Batson* rule was extended to the actions of a defendant because allowing a defendant to obtain an acquittal that is "assisted by racially discriminatory peremptory strikes" undermines public confidence in the judicial system just as much as a conviction that is obtained by purposeful racial discrimination on the part of a prosecutor. *McCollum*, 505 U.S. at 50, 112 S. Ct. at 2354, 120 L. Ed. 2d at 45.

The Fourteenth Amendment only prohibits purposeful racial discrimination that is "attributable to state action." *Id.* The Supreme Court held that when a state court allows a defendant to exercise a peremptory challenge in a discriminatory fashion, the court "place[s] its power, property and prestige behind the [alleged] discrimination." *Id.* at 52, 112 S. Ct. at 2355, 120 L. Ed. 2d at 47 (citation and internal quotation marks omitted) (second alteration in original). Even though a peremptory challenge is, by its very nature, a capricious and arbitrary

statutory right of the defendant, a court cannot enforce the defendant's exercise of that right it if is used to engage in purposeful racial discrimination against potential jurors. *See id.* at 50–55, 111 S. Ct. at 2354–57, 120 L. Ed. 2d at 45–48 (finding enforcement of a defendant's peremptory challenge to be a state action).

Courts use the *Batson* test to determine if a litigant is using peremptory challenges to engage in purposeful racial discrimination. The Supreme Court has summarized the *Batson* test as follows:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

*Purkett v. Elem*, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770–71, 131 L. Ed. 2d 834, 839 (1995). We now apply this test to the case at bar.

1. *Step one: The prima facie case of racial discrimination.* In determining whether the party objecting to the strike has made a prima facie case of purposeful discrimination, the court may consider all relevant circumstances, including a pattern of strikes against jurors of a particular race. *State v. Knox*, 464 N.W.2d 445, 448 (Iowa 1990). The prima facie case requirement, however, becomes moot when the party attempting to strike a juror offers a race-neutral explanation for the peremptory challenge. *Hernandez v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 1866, 114 L. Ed. 2d 395, 405 (1991).

We have not previously addressed the question of whether a trial court may raise a *Batson* issue sua sponte. However, the rationale underlying *Batson* and its progeny supports the position that a trial court may make an inquiry sua sponte after observing a prima facie case

of purposeful racial discrimination through the use of peremptory challenges. *Batson* makes it clear that a trial court has the authority to raise sua sponte such an issue to ensure the equal protection rights of individual jurors. *See Batson,* 476 U.S. at 99, 106 S. Ct. at 1724, 90 L. Ed. 2d at 89 ("In view of the heterogeneous population of our Nation, public respect for our criminal justice system and the rule of law will be strengthened if we ensure that no citizen is disqualified from jury service because of his race."); *see also McCullum,* 505 U.S. at 49–50, 112 S. Ct. at 2354, 120 L. Ed. 2d at 45 (" 'Be it at the hands of the State or the defense,' if a court allows jurors to be excluded because of group bias, '[it] is [a] willing participant in a scheme that could only undermine the very foundation of our system of justice—our citizens' confidence in it.' " (citation omitted)(alteration in original)).

When a defendant purposefully discriminates against a juror on the basis of the juror's race, the Supreme Court has recognized that "the 'barriers to a suit by an excluded juror are daunting.' " *McCollum,* 505 U.S. at 56, 112 S. Ct. at 2357, 120 L. Ed. 2d at 49–50 (quoting *Powers v. Ohio,* 499 U.S. 400, 414, 111 S. Ct. 1364, 1373, 113 L. Ed. 2d 411, 427 (1991)). As such, the State is allowed to object to a strike on behalf of the potential juror who has allegedly been discriminated against. *Id.* The State is "the representative of all its citizens [and therefore,] is the logical and proper party to assert the invasion of the constitutional rights of the excluded jurors in a criminal trial." *Id.*

Other jurisdictions have allowed a trial judge to inquire into an attorney's motives sua sponte once the court observes a prima facie case of purposeful racial discrimination. *See Lemley v. State,* 599 So.2d 64, 70 (Ala. Crim. App. 1992) ("By closing his eyes to the possible discrimination, the judge, 'in a significant way has involved himself with

invidious discrimination.'" (quoting *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 624, 111 S. Ct. 2077, 2085, 114 L. Ed. 2d 660, 676 (1991))); *People v. Rivera*, 852 N.E.2d 771, 785 (Ill. 2006), ("[W]e conclude that a trial court has the authority to raise a *Batson* issue *sua sponte* in appropriate circumstances.") *aff'd*, 556 U.S. 148, 129 S. Ct. 1446, 173 L. Ed. 2d 325 (2009); *Williams v. State*, 669 N.E.2d 1372, 1379 (Ind. 1996) ("We conclude that it was within the discretion trial courts enjoy to manage and control the proceedings to intervene to protect [a juror's equal protection rights]."); *Brogden v. State*, 649 A.2d 1196, 1200 (Md. Ct. Spec. App. 1994) ("A trial judge need not sit idly by when he or she observes what he perceives to be racial discrimination in the exercise of peremptory challenges. He is clearly entitled to intervene."); *People v. Bell*, 702 N.W.2d 128, 135 (Mich. 2005) ("We thus conclude . . . that a trial court may sua sponte raise a *Batson* issue."); *Hitchman v. Nagy*, 889 A.2d 1066, 1072 (N.J. Super. Ct. App. Div. 2006) ("We have no doubt that a trial judge has the authority to raise the issue of racial bias in the exercise of peremptory challenges sua sponte."); *State v. Evans*, 998 P.2d 373, 378–79 (Wash. Ct. App. 2000) ("[T]he trial judge, as the presiding officer of the court, should take the necessary steps to ensure that discrimination will not mar the proceedings in his courtroom." (citation and internal quotation marks omitted)). *But see Aki-Khuam v. Davis*, 339 F.3d 521, 527 (7th Cir. 2003) (reviewing *Williams*, 669 N.E.2d at 1379 in a habeas proceeding and affirming the district court, which noted that "the voir dire 'process is still an adversarial one and the case law, including *Batson* and the cases that followed it, make it clear that *Batson* issues must be raised. *Batson* is not self-executing.'" (citation omitted)); *Doe v. Burnham*, 6 F.3d 476, 481 (7th Cir. 1993) ("Under *Batson*, a court

should at least wait for an objection before intervening in the process of jury selection to set aside a peremptory challenge.").

We agree that a trial judge can inquire as to a defense attorney's motives for a peremptory strike. However, the best practice requires that the trial court first observe an "abundantly clear" prima facie case of discrimination. *Rivera*, 852 N.E.2d at 785. In holding that the court may raise the issue sua sponte, the Michigan Supreme Court pointed to the jurisdictional barriers a juror might face in trying to bring a suit as articulated by the United States Supreme Court in *Powers* and *McCollum* and further noted that "wrongly excluded jurors have little incentive to vindicate their own rights." *Bell*, 702 N.W.2d at 135. We are mindful of the difficulty an excluded juror would face in seeking to vindicate his equal protection rights, as well as the juror's lack of motivation to do so. *Rivera*, 852 N.E.2d at 785. We have also noted that "[c]ontrol of jury *voir dire* is lodged in the sound discretion of the trial court." *State v. Tubbs*, 690 N.W.2d 911, 915 (Iowa 2005) (citation and internal quotation marks omitted). We agree that "[t]rial courts are in the best position to enforce the statutory and constitutional policies prohibiting racial discrimination." *Bell*, 702 N.W.2d at 135. If a trial court observes an attorney using his peremptory strikes in such a way that would constitute a prima facie case of purposeful racial discrimination, it would be appropriate to ask for a race-neutral reason for the defendant's strikes.

While we recognize a trial court may raise the issue of purposeful racial discrimination sua sponte, like other jurisdictions to consider this issue, we will also "insist upon a clear indication of a *prima facie* case of purposeful discrimination *before* trial courts are authorized to act." *Rivera*, 852 N.E.2d at 785. This means that a trial court must wait until

it observes a party use a peremptory challenge in a discriminatory way prior to intervening in the use of peremptory challenges. *See, e.g.*, *Hitchman*, 889 A.2d at 1074 ("Requiring the trial court to identify a prima facie case of discrimination before initiating a [*Batson*] inquiry will avoid a chilling effect on counsel's further exercise of peremptory challenges."). Our general rule regarding factual findings and *Batson* violations is that "it is preferable for trial courts to make express findings in connection with *Batson* challenges, [but a] failure to do so is not necessarily fatal to the court's ruling." *Veal*, 564 N.W.2d at 807. When the court raises the *Batson* issue on its own, however, we will require the district court to "make an adequate record, consisting of all relevant facts, factual findings, and articulated legal bases for both its finding of a *prima facie* case and for its ultimate determination at the third stage of the *Batson* procedure." *Rivera*, 852 N.E.2d at 785–86. These requirements will ensure the parties will not use the court to engage in purposeful racial discrimination, while at the same time respecting the neutral role of the trial judge.

A pattern of strikes against jurors of a particular race could be prima facie evidence of racial discrimination. *Knox*, 464 N.W.2d at 448; *see also State v. Griffin*, 564 N.W.2d 370, 376 (Iowa 1997) (finding a prima facie case was established where the only two African-American panel members were struck). In this case, the trial judge informed counsel prior to the exercise of their peremptory strikes that Ramirez, a Hispanic, could properly be stricken from the jury panel, but Garcia, a second Hispanic, could not. Thus, the trial court sua sponte raised a *Batson* challenge before the parties even began to exercise their challenges. At this point in the proceedings, it would have been extremely difficult to show a prima facie case of purposeful racial

discrimination.  But more significantly, the trial court did not articulate on the record that it found a prima facie case of discrimination before proceeding to step two of the *Batson* procedure.  Based on the record in this case, we cannot conclude that the district court observed a clear indication of a prima facie case of purposeful racial discrimination.

The district court here lacked a sufficient basis for raising the *Batson* issue sua sponte.  However, after the attempted strike, the State also objected to Mootz's strike.  The State, however, did not argue that Mootz's challenge was based on racial discrimination.  Instead, the State simply stated, "I don't see any relevant reason for him being stricken."  This also falls short of establishing a prima facie case of purposeful racial discrimination.

> This does not end our inquiry.  The Supreme Court has noted,
>
> > [I]n the context of employment discrimination litigation under Title VII of the Civil Rights Act of 1964 that "where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."  The same principle applies under *Batson.*  Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.

*Hernandez,* 500 U.S. at 359, 111 S. Ct. at 1866, 114 L. Ed. 2d at 405 (citation omitted).  Though this case presents the opposite situation, where the State rather than the defendant seeks to prevent the exercise of a peremptory challenge, the same rule applies.  Once Mootz offered a race-neutral reason for the strike, the preliminary issue of whether the State had made a prima facie showing became moot.  *See id.*  Therefore, the State's failure to establish a prima facie case does not end the inquiry.

2. *Step two: A race-neutral reason for the strike.* Step two in a *Batson* analysis is extremely deferential to the party seeking to strike the juror. In the Supreme Court's words, "At this step of the inquiry, the issue is the facial validity of the [attorney's] explanation. Unless a discriminatory intent is inherent in the [attorney's] explanation, the reason offered will be deemed race neutral." *Id.* at 360, 111 S. Ct. at 1866, 114 L. Ed. 2d at 406. The Supreme Court does not require the reason for the strike be "persuasive, or even plausible." *Purkett,* 514 U.S. at 768, 115 S. Ct. at 1771, 131 L. Ed. 2d at 839. For example, the fact that a juror had "long, unkempt hair, a mustache, and a beard" is a proper race-neutral reason because " 'the wearing of beards is not a characteristic that is peculiar to any race' . . . [a]nd neither is the growing of long, unkempt hair." *Id.* at 769, 115 S. Ct. at 1771, 131 L. Ed. 2d at 840 (quoting *EEOC v. Greyhound Lines, Inc.,* 635 F.2d 188, 190, n.3 (3d Cir. 1980)). It is not until step three "that the persuasiveness of the justification becomes relevant." *Id.* at 768, 115 S. Ct. at 1771, 131 L. Ed. 2d at 839.

The *Batson* inquiry cannot be terminated at step two merely because the judge does not find the reason given to be persuasive. *Id.* The reason given must, in and of itself, violate equal protection. *See id.* Allowing the judge to simply stop the inquiry because he believes the reason given at step two was "silly or superstitious . . . violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.*

In this case, when asked to provide his reason for striking Garcia, Mootz offered the following explanation:

> I have a good reason to strike him. I didn't like the way he said that when he was arrested, that he deserved it and that he was a bartender and knows intoxication. There's a lot of reasons why this man should not be on this particular jury. But I certainly have a legitimate reason to strike him beyond the fact that he is Hispanic.

Both of these reasons were race-neutral. One race-neutral reason was Garcia's past interactions with police officers and his attitude towards the police based on those interactions. Our cases have repeatedly noted that a juror's interactions with law enforcement and the legal system are a valid, race-neutral reason for a peremptory challenge. *See Veal*, 564 N.W.2d at 807; *Griffin*, 564 N.W.2d at 376; *State v. Keys*, 535 N.W.2d 783, 785 (Iowa Ct. App. 1995). Mootz also voiced concerns over Garcia's claim that he was familiar with intoxicated people based on his experience as a bartender. The instant case arose out a bar fight that spilled out into the parking lot. There was evidence presented at trial that Mootz was intoxicated at the time of the incident. This was also a racially neutral reason for the strike. In addition to being race neutral, the justifications offered by Mootz are perfectly reasonable and satisfy step two of the *Batson* analysis.

Because race-neutral reasons were provided, the district court was required to accept them and proceed to step three, to determine whether the reasons were merely a pretext for discrimination. In response to Mootz's claim that he offered race-neutral reasons for striking Garcia, the court simply stated, "[I]n my opinion, you didn't." The district court also stated that Mootz offered "no legitimate reasons why . . . [Mootz] would have a real issue with Mr. Garcia . . . serving."

The trial court erred in concluding that Mootz's reasons for striking Garcia were not race-neutral and that Mootz's reasons for striking Garcia were not "legitimate." They were clearly both. The district court did not

engage in the proper analysis required by *Batson.* It stopped at step two when it erroneously determined Mootz did not offer proper, race-neutral reasons for the exercise of his peremptory strike. The trial court should have instead proceeded to step three to determine whether the court (or the State) had met its burden and shown that Mootz was attempting to use his peremptory strikes to engage in purposeful racial discrimination.

3. *Step three: Has the striking party attempted to engage in purposeful racial discrimination?* After the striking party offers its race-neutral reason for the strike, the district court must then determine whether the "stated reason constitutes a pretext for racial discrimination." *Hernandez,* 500 U.S. at 363, 111 S. Ct. at 1868, 114 L. Ed. 2d at 408. At this stage, the burden is on the party seeking to prevent the strike because "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett,* 514 U.S. at 768, 115 S. Ct. at 1771, 131 L. Ed. 2d at 839. The court must, at this point, "decide whether to believe the [attorney's] explanation for the peremptory challenges." *Veal,* 564 N.W.2d at 807. When the objection is made by the opposing party, a trial court does not need to make express findings regarding a *Batson* violation, but it is preferable for trial courts to do so. *Id.* In the absence of express findings, we are allowed to review the implied findings of the trial court regarding the attorney's credibility and his asserted reasons for the strike. *See id.*

The district court did not evaluate Mootz's credibility regarding the reasons provided for the peremptory strike. Instead, the court stated the reasons were insufficient, illegitimate, and invalid reasons for the strike. As discussed above, this was error by the trial court. Mootz's explanations for wanting to strike the juror—his past dealings with the

police and his experience with intoxicated bar patrons—were not only valid, racially neutral reasons for striking Garcia, they were reasonable. As the opponent of Mootz's strike, the State did not contend that Mootz was using his stated reasons for striking Garcia as a pretext for discrimination. Therefore, it did not meet its burden and prove purposeful racial discrimination on Mootz's part. The court's only obligation in this case was to determine, after hearing Mootz's justifications for his strike, whether the opponent of the strike had proven Mootz was using strikes to engage in purposeful racial discrimination. After the court heard Mootz's race-neutral reasons for his strikes, the next step for the court was to determine whether they were so "silly or superstitious" that they must constitute a mere pretext for purposeful discrimination. *See Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771, 131 L. Ed. 2d at 839. Instead, the court simply declared them to be invalid and illegitimate.

Mootz's reasons were legitimate, and they were not so implausible that they can be viewed as a mere pretext for discrimination. Mootz's reasons focused on the juror's attitudes regarding his past encounters with law enforcement and the juror's beliefs about intoxication that were formed during his time bartending. This case involved an altercation with a law enforcement officer that occurred following a bar fight where Mootz may have been intoxicated. Given the context of this case, Mootz's reasons cannot be seen as a mere pretext to purposeful racial discrimination. They represent legitimate concerns for a criminal defendant. In Mootz's opinion, Garcia's life experiences and prejudices made him an objectionable juror. In order to remove the objectionable juror, Mootz attempted to use one of the peremptory challenges guaranteed to him by Iowa Rule of Criminal Procedure 2.18(9). Mootz

was not engaging in purposeful discrimination on the basis of race. He was simply exercising his statutory right to strike a juror he worried would be predisposed to convict him. The district court erred when it prohibited Mootz from using his peremptory challenge to remove Garcia.

**B. Mootz's Remedy.** The State claims that under *State v. Neuendorf*, 509 N.W.2d 743 (Iowa 1994), prejudice will no longer be presumed when the defendant loses a peremptory challenge. In order to receive a new trial, the State claims Mootz must show actual prejudice resulting from the error. Mootz contends he is entitled to an automatic reversal without a showing of prejudice because the effect of the loss of his peremptory challenge cannot be ascertained, and it would be impossible to demonstrate prejudice. In a split decision, the court of appeals found that, under *Neuendorf*, Mootz must show actual prejudice in order to have his conviction reversed and that because there was no evidence of prejudice the conviction should be affirmed.

Mootz was charged with assault on a police officer causing bodily injury, a violation of Iowa Code section 708.3A(3), an aggravated misdemeanor. Under rule 2.18(9), Mootz was entitled to strike four prospective jurors. These strikes are granted to Mootz, and all criminal defendants, by statute and court rule and not by any constitutional right. *Rivera*, 556 U.S. at ___, 129 S. Ct. at 1453, 173 L. Ed. 2d at 328–29; *see also State v. Smith*, 132 Iowa 645, 647, 109 N.W. 115, 116 (1906). We have already determined the district court erroneously prevented Mootz from using one of his peremptory strikes on Garcia. Rule 2.18 does not provide a remedy for a violation. Our task is to determine the remedy for a defendant when he is wrongfully prohibited from using a peremptory strike on a particular juror in violation of rule 2.18(9) and that juror is ultimately seated.

Iowa court rules have the force and effect of laws, and therefore "we interpret rules in the same manner we interpret statutes." *City of Sioux City v. Freese*, 611 N.W.2d 777, 779 (Iowa 2000). Mootz's remedy, therefore, is a matter of statutory interpretation. When interpreting a statute, our goal is to give effect to the intent of the legislature. *Cox v. State*, 686 N.W.2d 209, 213 (Iowa 2004). When the statutory language is silent, legislative intent can be gleaned from the purposes and underlying policies of the statute, along with the consequences of various interpretations. *Id.*

Rule 2.18(9) allows a defendant ten, six, or four peremptory strikes, depending on the severity of the crime charged. Since the Constitution only requires the defendant be tried before a fair and impartial jury, peremptory challenges are a right given to the defendant beyond what the Constitution requires. *Rivera*, 556 U.S. at ___, 129 S. Ct. at 1453, 173 L. Ed. 2d at 329. We have stated that "courts should permit the freest exercise of that right within the limits fixed by the legislature. It is, as Blackstone says, 'an arbitrary and capricious right, and it must be exercised with full freedom, or it fails of its purpose.'" *State v. Hunter*, 118 Iowa 686, 691, 92 N.W. 872, 874 (1902) (quoting 4 William Blackstone, Commentaries 353). It has been a long-standing principle of this court that "[t]he statute gives the right absolutely, and, if denied, prejudice is conclusively presumed." *Id.* at 690–91, 92 N.W. at 873; *see also Spencer v. De France*, 3 Greene 216, 218 (Iowa 1851) ("It was error, therefore, in the court to refuse the challenge, and as we do not discover any other error in the record, the judgment is reversed upon this point, and a trial *de novo* awarded.").

The State argues we retreated from this rule in *Neuendorf* when we stated,

> In the absence of some factual showing that . . . a juror [was] seated who was not impartial, the existence of prejudice is entirely speculative. We believe it is too speculative to justify overturning the verdict of the jury on that basis alone.

*Neuendorf*, 509 N.W.2d at 746. In *Neuendorf*, the trial court erroneously denied a challenge for cause to a juror. *Id.* The defendant was then "forced to waste a peremptory challenge" to remove the objectionable juror. *Id.* at 747. While our prior precedent had presumed prejudice and required automatic reversal in such a situation, we abandoned that rule in favor of a rule that required the defendant to show that the jury that ultimately sat was in some way biased against the defendant. *Id.* at 745–47 (overruling *State v. Beckwith*, 242 Iowa 228, 46 N.W.2d 20 (1951)).

*Beckwith* cited *State v. Reed*, 201 Iowa 1352, 208 N.W. 308 (1926), for the proposition that prejudice must be presumed when a defendant is forced use a peremptory challenge to remove a juror who should have been removed for cause. 242 Iowa at 232, 46 N.W.2d at 23. *Reed* addressed the same situation as *Beckwith* and *Neuendorf*. A defendant challenged a juror for cause, the challenge was erroneously denied, and the defendant subsequently removed the objectionable juror with one of his peremptory challenges. *Reed*, 201 Iowa at 1353, 208 N.W. at 309. As in *Beckwith*, we found that removing the juror through the use of a peremptory challenge did not cure the trial court's error and that prejudice would be presumed. *Id.* at 1353–54, 208 N.W. at 309. Specifically, we stated,

> The statute gives a defendant in a criminal case two kinds of challenges, one for cause and one peremptorily. One of these classes is as valuable to the defendant as the other. The court has no right to deprive the defendant of the full number of statutory peremptory challenges given him by overruling challenges for cause and thus requiring a defendant to use his peremptory challenges against jurors to whom the challenge for cause should have been sustained.

*Id.* *Neuendorf* makes clear that forcing a defendant to "waste" a peremptory challenge to correct the trial court's erroneous denial of a challenge for cause, as the defendants in *Beckwith* and *Reed* were forced to do, will no longer result in a presumption of prejudice. *See Neuendorf*, 509 N.W.2d at 747. This holding is irreconcilable with the language we have just quoted from *Reed*. Accordingly, we now recognize that *Reed*, like *Beckwith*, has been overruled by *Neuendorf*.

The State argues that because the jury that convicted Mootz was also unbiased, *Neuendorf* should control and Mootz's conviction should be affirmed. However, this is the only relevant factual similarity between Mootz's case and the factual situations presented by *Reed*, *Beckwith* and *Neuendorf*. It is true that none of the juries involved in any of these cases were *constitutionally* defective. However, as we have noted, this case does not involve constitutional concerns. Instead, it focuses on the remedy to be given to a defendant who is improperly denied the right to exercise the peremptory challenges rule 2.18(9) guarantees him.

*Reed*, *Beckwith* and *Neuendorf* are distinguishable from Mootz's case in two important respects. The first distinction is that *Reed*, *Beckwith* and *Neuendorf* all address the remedy for a litigant who is wrongly denied a challenge for cause. *Reed* and *Beckwith* both stand for the proposition that peremptory challenges are not given to a defendant to correct erroneous rulings on challenges for cause. *Beckwith*, 242 Iowa at 232, 46 N.W.2d at 23; *Reed*, 201 Iowa at 1353–54, 208 N.W. at 309. Under those cases, if a defendant were forced to use one of his few peremptory challenges for this purpose, prejudice would have been presumed. *Beckwith*, 242 Iowa at 232, 46 N.W.2d at 23; *Reed*, 201 Iowa at 1354, 208 N.W. at 309. *Neuendorf* repudiated this principle, holding that prejudice will no longer be presumed when a defendant is forced to

use a peremptory challenge to correct the court's erroneous ruling on a challenge for cause. 509 N.W.2d at 746–47.

A peremptory challenge serves different purposes than a challenge for cause, and therefore its erroneous denial requires a different remedy. Mootz was denied the opportunity to exercise a peremptory challenge against a specific juror. The juror ultimately sat on the jury that convicted Mootz. The defendant in *Neuendorf* was forced to "waste" a peremptory challenge to correct the court's error. 509 N.W.2d at 747. We held that being forced to waste a peremptory challenge was not the type of error that required a presumption of prejudice. *Id.* However, once Neuendorf exercised his peremptory challenge, the court properly permitted the strike and removed the objectionable juror. Thus, we did not have occasion to reach the issue presented by Mootz in this case.

One purpose of a peremptory challenge is to serve as a safeguard against an unjust conviction. *Hunter*, 118 Iowa at 691, 92 N.W. at 874. In *Neuendorf*, the peremptory challenge served this exact purpose. If Neuendorf had not been allowed to exercise his peremptory challenge against the objectionable juror, that juror would have stayed on the jury, and the conviction would have been overturned because the jury that convicted him would have been found unconstitutionally biased on appeal. *See State v. Tillman*, 514 N.W.2d 105, 108 (Iowa 1994). *Neuendorf* demonstrates the critical role peremptory challenges can play in preventing unjust convictions. By preventing Mootz from exercising his strike, the district court increased the chances that a juror who might later be found to be removable for cause would end up sitting on the jury. *Neuendorf* does not address the wrongful denial of a peremptory challenge. Therefore, it in no way represents a retreat from our earlier cases that require automatic reversal of a conviction when a

juror is allowed to remain on the jury despite the defendant's valid objection to his presence expressed in the form of a peremptory challenge. *See Hunter*, 118 Iowa at 691–92, 92 N.W. at 873–74.

A second, more important distinction between Mootz's case and those of *Reed, Beckwith* and *Neuendorf* is that unlike the jurors at issue in *Reed, Beckwith* and *Neuendorf*, the objectionable juror actually sat on the jury that convicted Mootz. The defendants in *Reed, Beckwith* and *Neuendorf* were not actually judged by the jurors they properly found objectionable. Mootz was. Allowing a juror to sit on a jury when the defendant properly objected to that juror's presence poses a problem not addressed by *Reed, Beckwith* or *Neuendorf*.

More recently, we have held that prejudice will not be presumed when a court erroneously grants a litigant's challenge for cause. *See Summy v. City of Des Moines*, 708 N.W.2d 333, 340 (Iowa 2006). This case is also distinguishable from the case at bar. In *Summy*, the plaintiff sued the city of Des Moines after he was struck in the eye with a golf ball. *Id.* at 335–36. Summy filed a motion to exclude all Des Moines residents from the jury panel. *Id.* at 336. He argued "that because a significant verdict was likely and because such a verdict would result in substantially higher taxes, all Des Moines property owners would have a personal interest adverse to the plaintiff." *Id.* at 339. The district court denied Summy's request to remove all Des Moines residents from the jury panel, but ruled that all property owners would be excused. *Id.* at 336. We noted that "[p]rior to 1984, this court had routinely held that 'when an action in tort is brought against a municipality . . . [the] plaintiff may . . . effectively challenge any members of the jury panel who are taxpayers in the defendant municipality.'" *Id.* at 338 (citations

omitted). However, in 1984, the legislature enacted section 624.11A, which stated,

> When selecting a jury in a trial in which a municipality is a defendant, a juror challenge based on the potential juror's status as a taxpayer of that municipality shall not be allowed unless a real, substantial, and immediate interest is shown which would unfairly prejudice the plaintiff.

Iowa Code § 624.11A. We found the statute "require[d] a demonstration of bias on the part of each juror sought to be excluded." *Summy*, 708 N.W.2d at 339. The district court had not required such a showing prior to excusing all owners of Des Moines property from the jury panel and had therefore abused its discretion. *Id.*

Having established that the district court failed to comply with section 624.11A, we then turned to the question of the defendant's remedy. *Id.* We stated, "Prejudice from the erroneous exclusion of a juror will not be presumed. Rather, a party claiming prejudice must establish that the resulting jury was not impartial and competent." *Id.* (citations omitted). We went on to note, "The City has not demonstrated, nor even claimed, that the trial court's error forced the City to leave an objectionable juror on the jury. In the absence of such a showing, we cannot find prejudice." *Id.* at 340.

There are several key differences between the error found in *Summy* and the error committed by the trial court in this case. First, as we noted in *Summy*, the trial court's error did not result in the defendant being forced to leave an objectionable juror on the jury. *Id.* Mootz felt that Garcia's experiences as a bartender and his past interactions with law enforcement might prejudice him against Mootz. Though these biases fell short of the standard for a challenge for cause, they led Mootz to believe that Garcia would be sympathetic to the State's case against

him. In that sense, Mootz found Garcia to be an objectionable juror who Mootz properly sought to remove by using one of his peremptory strikes. Unlike the defendant in *Summy*, Mootz's case was decided by a jury that included a juror that Mootz found objectionable and who he had every right to remove from the jury.

Second, in *Summy,* we were fashioning a remedy for those instances where a district court has abused its discretion and erroneously excluded jurors from the panel based on an incorrect interpretation of section 624.11A. *See id.* at 339. In this case, we are asked to determine the proper remedy for the wrongful denial of a statutorily guaranteed peremptory challenge based on the district court's interpretation of *Batson* and its progeny. It is true, as a general principle, "that courts normally apply the prejudice standard to decide if defects and errors in the jury-selection process will support a reversal of the judgment." *Id.* at 345 (Cady, J., dissenting). *Summy* and *Neuendorf* are both examples of this general principle. However, as the dissent in *Summy* noted, "While the landscape of the law is dominated by the primary colors of general principles, subtle shades of exceptions must be observed to fully depict the overall brilliance of the composite of justice." *Id.* The erroneous denial of a peremptory challenge is one such "subtle shade of exception."

Though not constitutionally mandated, the peremptory challenge has long played a fundamental role in the jury selection process. *See, e.g., Holland v. Illinois*, 493 U.S. 474, 481, 110 S. Ct. 803, 808, 107 L. Ed. 2d 905, 917 (1990) ("The tradition of peremptory challenges . . . was already venerable at the time of Blackstone, was reflected in a federal statute enacted by the same Congress that proposed the Bill of Rights, was recognized in an opinion by Justice Story to be part of the common

law of the United States, and has endured through two centuries in all the States." (internal citations omitted)). Peremptory challenges ensure the jury that hears the case is acceptable to the parties involved and preserve " 'the role of litigants in determining the jury's composition.' " *See McCollum*, 505 U.S. at 57, 112 S. Ct. at 2358, 120 L. Ed. 2d at 50 (citation omitted); *see also Johnson v. City of Waterloo,* 140 Iowa 670, 671–72, 119 N.W. 70, 71 (1909) (noting that when a party fails to use all its peremptory challenges, "the jurors before whom the cause was tried are presumed to have been acceptable to it"). Voir dire is a very short window of time for attorneys and the court to determine whether a juror will be unbiased and impartial. The peremptory challenge allows the parties to "eliminate those jurors perceived as harboring subtle biases with regard to the case, which were not elicited on voir dire or which do not establish legal cause for challenge." *Commonwealth v. Hampton*, 928 N.E.2d 917, 927 (Mass. 2010) (citation and internal quotation marks omitted). The peremptory challenge plays a unique role in our legal tradition, and therefore the denial of a peremptory challenge results in a unique remedy.

The State notes *Rivera* does not require an automatic reversal rule in order to meet minimal due process standards under the Federal Constitution. *See Rivera,* 556 U.S. at ___, 129 S. Ct. at 1456, 173 L. Ed. 2d at 331. Since the erroneous denial of the use of a peremptory challenge is not a due process violation, the State argues there is no need for an automatic reversal rule in situations like the one before us. However, as noted above, peremptory challenges are a statutory, as opposed to a constitutional, right. Therefore, in resolving this case, we are not limited to the minimal standards required by due process. We are instead asked to interpret rule 2.18(9) to ascertain the remedy that

we believe the legislature intended to provide defendants who were wrongfully denied the use of peremptory strikes provided by rule 2.18(9).

In support of an automatic reversal rule, Mootz argues that the erroneous denial of a peremptory strike is not amenable to harmless error analysis because of the difficulty in showing actual prejudice. *See, e.g., State v. McLean*, 815 A.2d 799, 805 (Me. 2002); *Angus v. State*, 695 N.W.2d 109, 118 (Minn. 2005); *State v. Vreen*, 26 P.3d 236, 238–40 (Wash. 2001). *But see Rivera*, 879 N.E.2d at 888; *Bell*, 702 N.W.2d at 138–41. This argument has merit. The State has not provided, nor can we conceive of, any situation in which a defendant could ever show prejudice arising out of the wrongful denial of a peremptory challenge where, as is the case here, the juror was not also removable by a challenge for cause. A defendant could only show prejudice by showing that the juror he sought to remove was biased. However, if the juror were biased, then the juror would be removable for cause, and the question regarding the *peremptory* challenge would become moot.

The Supreme Court's holding in *Rivera* does not dispute this point. Rather, it merely states that an erroneous ruling on a reverse-*Batson* challenge is not a structural error of a constitutional dimension requiring automatic reversal and leaves to the states to decide whether the "mistaken denial of a peremptory challenge is reversible error *per se*." *Rivera*, 556 U.S. at ___, 129 S. Ct. at 1455–56, 173 L. Ed. 2d at 331. Following *Rivera*, states have continued to apply an automatic reversal rule grounded in state law, not the Federal Constitution. *See People v. Hecker*, 942 N.E.2d 248, 271–72 (N.Y. 2010), *cert. denied*, ___ U.S. ___, 131 S. Ct. 2117, 179 L. Ed. 2d 911 (2011); *Hampton*, 928 N.E.2d at 927.

Denying the free exercise of peremptory challenges does not violate the Constitution, but it forces the defendant to be judged by a jury that

includes a juror that is objectionable to him. When this occurs, and the defendant properly objected to the juror by attempting to use a peremptory challenge, and that objection is wrongly overruled, we will presume the error is prejudicial. Any other conclusion would leave the defendant without a remedy. We do not think this is the result intended when rule 2.18(9) was drafted.

Rule 2.18(9) requires automatic reversal of a defendant's conviction when the trial court's erroneous ruling on a reverse-*Batson* challenge leads to the denial of one of the defendant's peremptory challenges. We do not believe that an automatic reversal rule will result in trial courts and prosecutors being less zealous in their attempts to stop purposeful racial discrimination by defendants. Adherence to the proper, three-step *Batson* analysis is sufficient to ensure that all parties are allowed to use their peremptory challenges while complying with the Constitution's equal protection requirements. *Accord Hecker*, 942 N.E.2d at 272–73. An automatic reversal rule will help ensure a district court will not deprive criminal defendants of their right to peremptory challenges in an effort to safeguard the equal protection rights of jurors, without first undertaking a thorough *Batson* analysis.

## IV. Disposition.

Mootz sought to remove a juror using one of his peremptory challenges guaranteed by rule 2.18(9). The district court, without determining Mootz was engaging in purposeful racial discrimination, denied his peremptory challenge and insisted the objectionable juror be allowed to sit on the jury. This ruling was in error. It would be an impossible burden to require Mootz, or any other similarly situated defendant, to show actual prejudice in order to reverse his conviction. Such an interpretation would eliminate any remedy for violations of rule

2.18(9). We therefore require automatic reversal whenever a defendant is denied the use of a peremptory challenge based on an erroneous interpretation of *Batson* and its progeny and the objectionable juror is improperly seated.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except Wiggins, J., who concurs specially and Mansfield, J., who takes no part.

**WIGGINS, Justice (concurring specially).**

I concur in the decision because we should presume prejudice occurs when the court allows a juror who it should have excluded to sit on the jury. The reason I am writing specially is to state that a logical extension of this rule occurs when the court forces a party to use a peremptory challenge to strike a juror who the court should have removed, but failed to do so, for cause.

Factually, when a party is required to use a peremptory challenge to strike a juror who the court should have excused for cause, that party is unable to use that peremptory strike to remove another questionable juror. In this circumstance, the court allows a questionable juror who should not be on the jury to sit, and we should presume prejudice occurred. This was the rule in *State v. Beckwith*, 242 Iowa 228, 232, 46 N.W.2d 20, 23 (1951), and *State v. Reed*, 201 Iowa 1352, 1353–54, 208 N.W. 308, 309 (1926), before this court expressly overruled *Beckwith* and impliedly overruled *Reed* in *State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993). Although I believe this court was wrong when it overruled *Beckwith* and *Reed* in *Neuendorf*, we will have to leave this issue for another day when confronted with the proper factual situation.