# IN THE COURT OF APPEALS OF IOWA

No. 21-1772
Filed November 17, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DUSTIN ELLIOTT WILLIAMS,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.


    A defendant appeals the denial of his *Batson* challenge.  **AFFIRMED.**


    Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

    Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


    Considered by Bower, C.J., Tabor, J., and Vogel, S.J.*

    *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**TABOR, Judge.**

Dustin Williams appeals his conviction for possession of a controlled substance, third offense, as a habitual offender, arguing the court should have granted his *Batson* challenge.[1]  He contends the State struck a "multiracial" potential juror in violation of the Equal Protection Clause.  The State responds that the trial prosecutor had a credible, race-neutral reason for the strike, and the district court correctly denied his challenge.  Relying on the perceptions of the district court, we also reject his constitutional claim.

## I.  Facts and Prior Proceedings

In March 2021, police stopped Williams's car for having no license plate. They found scales and baggies containing methamphetamine.  The State charged Williams with a felony drug offense.  *See* Iowa Code §§ 124.401(5), 902.8, .9(1)(c) (2021).

Williams appeared for a jury trial in July 2021.  During jury selection, he raised a *Batson* challenge to the prosecutor using a peremptory strike on a potential juror who identified himself as "multiracial."[2]  The court denied the challenge.  The jury found Williams guilty as charged.  The court sentenced him to a term of fifteen years.  Williams appeals.

## II.  Scope and Standard of Review

We review *Batson* challenges de novo.  *See State v. Veal*, 930 N.W.2d 319, 327 (Iowa 2019).

---

[1] *See generally Batson v. Kentucky*, 476 U.S. 79 (1986).
[2]  Williams identified himself as African-American.

### III. Analysis

Williams's only contention on appeal is that the district court wrongly denied his *Batson* challenge. "Purposeful racial discrimination in selection of [a jury] venire violates a defendant's right to equal protection." *Batson*, 476 U.S. at 86. The Equal Protection Clause "forbids the prosecutor to challenge potential jurors solely on account of their race." *Id.* A challenge under *Batson* follows three steps: first, the defendant must make "a prima facie case of racial discrimination." *State v. Mootz*, 808 N.W.2d 207, 215 (Iowa 2012) (citation omitted). That is, "the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race."[3] *Batson*, 476 U.S. at 96 (internal citation omitted). The defendant must show "these facts and other relevant circumstances raise an inference of discrimination." *Veal*, 930 N.W.2d at 332.

At step two, "the burden of production shifts to the [State] to come forward with a race-neutral explanation." *Mootz*, 808 N.W.2d at 215 (citation omitted). "A neutral explanation . . . means an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* The reason "need not rise to the level justifying exercise of a challenge for cause." *State v. Griffin*, 564 N.W.2d 370, 375 (Iowa 1997) (citation omitted). The discriminatory intent must be "inherent in the

---

[3] Recently, the Supreme Court clarified, "A defendant of any race may raise a *Batson* claim, and a defendant may raise a *Batson* claim even if the defendant and the excluded juror are of different races." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2243 (2019).

[prosecutor's] explanation," *Mootz*, 808 N.W.2d at 214 (quoting *Hernandez*, 500 U.S. at 360), and it need not be "persuasive, or even plausible," *id.* (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). In other words, "[t]he reason given must, in and of itself, violate equal protection." *Id.* at 218. Step one is moot if the State satisfies its burden at step two. *See id.*

At the third step, the court decides whether the "stated reason constitutes a pretext for racial discrimination." *Id.* at 219 (citation omitted). It is only at step three that we determine whether the reason given is a persuasive justification. *Purkett*, 514 U.S. at 768 ("It is not until the third step that the persuasiveness of the justification becomes relevant . . . ."). "The court must, at this point, 'decide whether to believe the [attorney's] explanation for the peremptory challenges.'" *Mootz*, 808 N.W.2d at 219 (citation omitted). "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett*, 514 U.S. at 768.

During voir dire, the prosecutor and the potential juror, X.Q., had the following brief discussion:

> [D]oes anybody . . . know anybody from my office, the Polk County Attorney's Office, or have any friends or family that had any interaction with our office? No?
> . . . .
> PROSECUTOR: Okay. I saw another hand. Sir?
> X.Q.: My fiancée worked as an intern in the prosecutor's office.
> PROSECUTOR: What's your name?
> X.Q.: [X.Q.]
> PROSECUTOR: [X.Q.], who is you fiancée, if you don't mind me asking.
> X.Q.: [N.D.]
> PROSECUTOR: [N.D.] When did she intern with our office?
> X.Q.: I guess it would have been two years ago.

PROSECUTOR: Two years ago.  Okay.  So I would have been here.  Do you know what division she worked in?

X.Q.: I don't remember.

PROSECUTOR: You don't remember.  Did you guys kind of talk about what her experience was like?

X.Q.: Not in detail.

PROSECUTOR: Not in detail.  Did she have a positive experience?

X.Q.: It was an educational experience.

PROSECUTOR: Okay.  It was an educational experience.  You know, I will take that.  I will take that.  Educational.  At a minimum, it's supposed to be that.  I like to make it a little more fun, but I will take educational.  Any reason why her experience would influence your decision-making process?

X.Q.: Not in this context.

PROSECUTOR: Okay.  Excellent.  Thank you for that.

Defense counsel did not ask X.Q. any questions.

The State exercises a preemptory strike to exclude X.Q. from the jury.  At the end of voir dire, defense counsel raised a *Batson* challenge to the State's action.  The prosecutor offered this reason for the strike:

> The record reflects my conversation with [X.Q.] on the record, which indicated that he, through his, I think, he said fiancée or wife had prior interactions with my office, specifically the Polk County Attorney's Office.  In my general conversation with [X.Q.], I became of the opinion that either he or his wife did not harbor necessarily positive experiences working with our office.  As I directly asked him, was it a positive experience, and instead of saying yes, he replied twice with it was educational, which I took to mean that there was educational value, albeit, I don't believe that his spouse or fiancée enjoyed that experience.[4]

Defense counsel had a different read of the interview:

> [The prosecutor] did ask him if it was a positive experience, and he did not respond affirmatively to say that it was a positive experience, but he also didn't say no.  He said it was an educational experience.

---

[4] The prosecutor gave the added reasoning that "in my questioning . . . and my observations of [X.Q.] during general questioning, [X.Q.] appeared to be . . . more disengaged than other jurors."  The district court commented "I guess I didn't really notice that as much," implicitly rejecting the prosecutor's reasoning.  The State does not reprise the "disengaged" rationale on appeal.

I don't know if he said it once or twice, but if he did, I wouldn't dispute it. But he didn't say anything on the record that was negative about the experience. His recitation was that it was neutral. It was maybe complicated. It was an experience that, as people being experienced in our profession, they encounter.

His fiancée, I believe, based on the context of the conversation was a law student who was interning in their office, although maybe she wasn't a law student. She was an intern in their office. But I think that his statements were entirely neutral about the experience. That doesn't rise to the level of sufficient reason to strike this juror . . . .

The court accepted the prosecutor's reason:

[T]he response made to the questions about his fiancée interning at the county attorney's office is grounds for the strike. He was—and I think [the State] was, you know, had a good conversation with [X.Q.], and [X.Q.] raised the issue and said was it positive experience, and there's a pause, and then said, it was educational. And I took it that that could potentially be a negative interaction. That's the way I heard it. And maybe it wasn't, but he didn't say it was positive. And educational can be negative. It can be positive.

I think it certainly gives [the State] grounds to exercise a preemptive strike with regard to the juror. It's certainly race neutral. It's based upon his fiancée's experience in that office. And I think [the prosecutor] would have concern based on this answer whether or not [X.Q.] would be fair to the State. Particularly, when it's his office that's prosecuting case.

Because the district court and parties on appeal move straight to the latter steps of the *Batson* analysis, we will do the same.[5]

---

[5] At step one, the evidence for a prima facie showing of racial discrimination centers on X.Q.'s racial self-identification and the fact of the strike. *See Mootz*, 808 N.W.2d at 215 (explaining at step one, "the court may consider all relevant circumstances, including a pattern of strikes against jurors of a particular race"); *see also Flowers*, 139 S. Ct. at 2243 (listing the factors the trial judge should consider in evaluating whether racial discrimination occurred, including statistics on the prosecutor's exercise of peremptory strikes against Black versus white jurors; evidence of disparate questioning and investigation; comparisons of Black jurors who were struck versus white jurors who were not; the prosecutor's misrepresentations of the record in explaining strikes; history of the State's peremptory strikes in past cases; and other relevant circumstances bearing on racial discrimination). The trial record does not show that the State argued the lack of a prima facie case, so we assume the State waived that ground.

Step two is "extremely deferential" to the State. *Mootz*, 808 N.W.2d at 218. The key issue is "the facial validity of the [prosecutor's] explanation." *Id.* (quoting *Hernandez*, 500 U.S. at 360). "The trial court must consider the prosecutor's race-neutral explanations in light of all of the relevant facts and circumstances, and in light of the arguments of the parties." *Flowers*, 139 S. Ct. at 2244. "[T]he best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge." *Id.* (citation omitted). Such "determinations of credibility and demeanor lie peculiarly within a trial judge's province." *Id.* For that reason, we give "a great deal of deference to the district court's evaluation of credibility." *Mootz*, 808 N.W.2d at 214. "The trial judge must determine whether the prosecutor's proffered reasons are the actual reasons, or whether the proffered reasons are pretextual and the prosecutor instead exercised peremptory strikes on the basis of race." *Flowers*, 139 S. Ct. at 2244.

Williams contends the prosecutor's proffered reason—the less-than-positive experience of X.Q.'s fiancée as an intern for the county attorney—"did not overcome the prima facie showing of purposeful discrimination." He argues X.Q.'s answers did not show "his fiancée's experience in the county attorney's office would influence his decision-making." He asks us to find the reason given was merely pretext for purposeful discrimination.

The State contends that it is well settled that a potential juror's encounters with the prosecutor's office can be a basis for removal.[6] *Cf. Mootz*, 808 N.W.2d at

---

[6] The State mentions in passing, "The prosecutor could probably strike X.Q. based on the mere fact of his fiancée's prior connection to the Polk County Attorney's office, even without more."

219 ("Our cases have repeatedly noted that a juror's interactions with law enforcement and the legal system are a valid, race-neutral reason for a peremptory challenge.").

The supreme court examined that principle recently and noted "the disproportionate impact [on African-American jurors] when jurors can be removed based on prior interactions with law enforcement." *Veal*, 930 N.W.2d at 334. In that case, the defendant argued "allowing prosecutors to use peremptory strikes on prospective jurors who are relatives of individuals they previously prosecuted disproportionately implicates African-American potential jurors." *Id.* (internal quotation marks omitted). Still, the court recognized that case involved a "special set of circumstances": the struck juror's father was prosecuted by the same prosecutor and sent to jail for life. *Id.* Thus the court found the strike valid. *Id.*

Here we do not see a "special set of circumstances" that would mark the juror's views to the same extent as in *Veal*. X.Q.'s fiancée interned in the county attorney's office two years earlier, X.Q. did not know what division she worked in, and they did not speak about her work in detail. And Williams insists on appeal that describing the experience as "educational" was at most neutral and not enough to warrant the strike. On those facts, we are concerned about the disparate impact of striking this juror.

Yet, we must defer to the district court's ringside seat for jury selection. The court recalled X.Q.'s peculiar response to the prosecutor's question: "there's a pause, and then [X.Q.] said, it was educational." The court took that to mean the fiancé may have had a negative experience while interning for the county attorney

and shared that negativity with the potential juror. The court agreed with the prosecutor that the exchange raised a concern about X.Q.'s ability to be fair.

"[R]ace-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g., nervousness, inattention), making the trial court's firsthand observations of even greater importance." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). The court is responsible for "evaluat[ing] not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." Here, we rely on the district court's interpretation of the potential juror's demeanor and how he conveyed his understanding of his fiancée's experience with the county attorney's office.

Our view is bolstered by some earlier interactions during voir dire. The court asked whether anyone had served on a jury before. Two potential jurors said they had. When asked, both confirmed it was a "good experience." The State did not exercise peremptory strikes against either.[7] Those conversations drew a contrast from X.Q.'s response when asked whether his fiancée had a "good experience" interning for the county attorney. The subtext, tone of voice, and demeanor of the jurors are relevant and not apparent from a transcript. We must defer to the district court's impressions of the prosecutor's perception of potential bias against his office. With that deference, we find the reason was race-neutral and not pretext to strike a multiracial juror. We affirm the denial of the *Batson* challenge.

**AFFIRMED.**

---

[7] The defense exercised peremptory strikes to remove them.