STATE of Iowa, Plaintiff–Appellee,

v.

Justin Robert JENTZ, Defendant–
Appellant.

No. 12–1619.

Court of Appeals of Iowa.

Nov. 6, 2013.

Gina L. Kramer of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney General, Ralph Potter, County Attorney, and Mark Hostager, Assistant County Attorney, for appellee.

Heard by VOGEL, P.J. and DANILSON and TABOR, JJ.

VOGEL, P.J.

Justin Jentz was convicted of operating while intoxicated (OWI) and possession of marijuana while being a third or greater offender, in violation of Iowa Code sections 321J.2(1)(a)(b) and 124.401(5) (2011), respectively. Jentz raises several issues on appeal. He first claims his constitutional right to know the charges against him, as well as his right to due process, were violated when, after the first phase of the trial concluded, it came to light the possession charge was a D felony, not an aggravated misdemeanor; therefore, the district court erred in denying his motion in arrest of judgment that requested he not be charged with a D felony. However, Jentz did not preserve error on either constitutional claim, because the specific constitutional challenges Jentz now makes on appeal were not presented to the district court, and no ruling was made that we may review for appropriate application of constitutional principles. Jentz further argues the five-year term imposed was an illegal sentence because treatment of the possession offense as a D felony is contrary to the language and intent of Iowa Code section 124.401(5). We find the sentence appropriate under the plain language of the second paragraph of the statute authorizing the charge of a D felony. Jentz next asserts trial counsel was ineffective for failing to advise him the possession offense could be a D felony; however, we find the record is inadequate to address his ineffective assistance claim on direct appeal. Jentz also argues the district court erred in denying his motion for a judgment of acquittal, given the State did not provide enough evidence he was the person who committed the prior crimes that served as the predicate convictions for the possession charge's penalty enhancement. We hold that a unique name, in combination with the same birth date and the fact the crimes were all committed in a similar geographic location, is substantial evidence supporting the finding of identity. Jentz last asserts the district court erred

in denying his motion to dismiss for failure to bring him to trial within one year of arraignment, and that good cause did not exist for the delay. However, we find Jentz caused the delay by traveling to another state, incurring criminal charges and awaiting resolution of the other state's prosecution, and that this resolution constituted good cause for the delay. Therefore, we affirm Jentz's convictions.

## I. Factual and Procedural Background

These charges arise from Jentz's activities on February 11, 2011. After responding to a call from a McDonald's restaurant employee who reported a driver in the drive-through lane appeared to be intoxicated, police followed the vehicle matching the description and observed it swerving out of the lane of travel by several feet before returning to the proper lane. Police pulled the vehicle over and identified Jentz as the driver. Upon searching his person, police found a four-gram bag of marijuana. Jentz's blood alcohol content was 0.107.

On February 16, 2011, the State filed a trial information and supplemental trial information charging Jentz with operating while intoxicated or drugged and possession of a Schedule I controlled substance, to wit: Marijuana, while being a third or greater offender. The possession offense was in violation of Iowa Code section 124.401(5). Jentz was arraigned the same day.

Jentz failed to appear for a final pretrial conference in April 2011, prompting the issuance of an arrest warrant, which was later quashed. A warrant was again issued for non-appearance in September 2011. Jentz was in Florida, and was arrested there on October 26, 2011, for aggravated battery. Jentz executed a waiver of extradition consenting to return to Iowa on November 7, 2011; however, the bonds-man in Florida refused to post bond after learning Jentz had an outstanding warrant in Iowa. Jentz was subsequently held in police custody in Florida until he entered a plea on April 5, 2012. After being sentenced to time served, Jentz was picked up from Florida on April 18, 2012, by Iowa authorities. Jentz then appeared before the district court in Dubuque on April 25, 2012. Asserting a violation of the one-year speedy trial requirement under Iowa Rule of Criminal Procedure 2.33(2)(c), Jentz moved to dismiss the case. The district court denied the motion, determining good cause existed for the delay.

The trial proceeded in two phases. The first phase, which began on May 30, 2012, was to determine whether Jentz was guilty of the offenses of operating while intoxicated and possession of marijuana. The jury returned guilty verdicts as to both charges on June 1, 2012. The second phase of the trial required the jury to decide whether Jentz had been convicted of three previous drug offenses, which served as predicate offenses for the penalty enhancement. This phase began June 4, 2012.

On the morning of June 4, 2012, prior to the start of the second phase, the State informed the court and Jentz it intended to treat the possession of marijuana conviction as a class "D" felony rather than an aggravated misdemeanor, after having reviewed the case law and statute at issue. Both parties agreed neither had previously discussed the charge as being a class "D" felony, and that all plea negotiations were based on the assumption the possession charge was an aggravated misdemeanor. Finding the language of the statute controlled over the misconception of the attorneys, the court ruled the second phase of the trial should proceed.

Jentz moved for a judgment of acquittal after the State rested its case in the second phase. Jentz claimed the State's evi-

dence was not sufficient to support the conclusion he was the person identified in the arrest records, as the State only relied on the identity of name, birth date, and the fact the offenses occurred in eastern Iowa to show Jentz committed those crimes. The motion was denied, and the jury returned a verdict of guilty.

On June 21, 2012, Jentz filed a motion in arrest of judgment, stating his "6th Amendment and 14th Amendment right to be informed of the nature of the charge against him" were violated when the State prosecuted him for a class "D" felony rather than an aggravated misdemeanor. He further argued the court misapplied the law in treating the possession offense as a class "D" felony. The district court denied the motion. Jentz was sentenced to 180 days for the operating while intoxicated conviction and a five-year indeterminate sentence on the marijuana conviction, with the sentences to run concurrently. Jentz now appeals, asserting several bases of error.

## II. Denial of Motion in Arrest of Judgment

On appeal, Jentz refines his arguments and asserts that enhancing the level of the charge against him was a violation of his right "to know the charges against him and his rights to due process," under both the federal and Iowa constitutions. Therefore, he asserts the district court erred in denying his motion in arrest of judgment that requested he not be charged with a class "D" felony.

The State maintains Jentz did not preserve error on these arguments, as his objection at trial was not sufficient to preserve error. The State argues that rather than making a clear objection, when Jentz became aware the State intended to seek a felony level punishment, he merely equivocated. He did not raise the argument the

State's actions constituted a violation of his constitutional right, or request any sort of relief. Jentz responds he adequately preserved error by making his opposition clear to the court and the court in fact ruled the State could proceed with seeking a class "D" felony punishment for the possession conviction, thus establishing it considered, and then overruled, Jentz's argument.

"The doctrine of error preservation has two components—a substantive component and a timeliness component." *State v. Krogmann*, 804 N.W.2d 518, 523 (Iowa 2011) (holding a one-page resistance that stated there was no legal basis for the State's actions did not properly preserve error with respect to the defendant's constitutional claims). To preserve error on appeal, the party must first state the objection in a timely manner, that is, at a time when corrective action can be taken, in addition to the basis for the objection. *Id.* at 524. The court must then rule on the issue. *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012). "If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Id.* (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002)).

Here, the discussion regarding the felony classification occurred the afternoon of June 4, 2012. The following exchange took place:

The Court: Is it the State's position that if the jury finds the Defendant was indeed convicted of the manufacturing charge, that the defendant is now looking at a felony as opposed to an aggravated misdemeanor?

The State: That's our reading of that section.

The Court: I just wanted to be clear about it.

The court went on to discuss the case *State v. Cortez*, with argument from Jentz regarding the proper interpretation. The court and Jentz then proceeded with the following discussion:

Defense Counsel: Your Honor, I guess I'm a bit at a loss here. We're talking about a felony now?

The Court: Yeah.

Defense Counsel: Because up until now we had never talked about this being a felony. This wasn't charged as a felony. This is charged as a misdemeanor the entire while. It has never gone through any felony procedure. Everything was always handled as a misdemeanor, and up until right now, I was under the assumption that even if everything came in, this was still going to be an aggravated misdemeanor.

The Court: That's why I asked it.

Defense Counsel: Correct.

The Court: Because that was my impression, but only from a notation made on the Trial Information where it talked about the nature of the offense being an SR or AG or whatever. That's the only place that I got that.... [T]he law doesn't change in the sense of the facts are there, you've always known what the facts are that they were alleging, you have known the offenses, the predicates that they were talking about, and so I'm not sure that the Defendant is in a position to cry foul at this point because of an interpretation of whether he's facing an aggravated or a felony, and as far as what conversations you may have had with the State regarding the charge and your negotiations, obviously, I don't know anything about that or how that may play into things.

Defense Counsel: I can inform the Court that the felony has never come up in any of these cases.

The Court: Okay. So what would you have me do if I find that he is correct in terms of if, indeed, the jury finds that he is the person that was convicted of manufacturing marijuana, he's going to argue that he faces a five-year prison sentence?

Defense Counsel: I don't know right now, Judge. We haven't had the chance to even think about it or look into it. It's just came up a few minutes ago.

The Court:.... What I'm trying to figure out, gentlemen, is whether—is he accurate that you two have never talked, [the State], about the fact that this possession as a third or greater offender was going to be subjecting him to a felony sentence as opposed to an aggravated?

The State: I don't recall having any discussion like that with [defense counsel]. I don't know that we talked about it....

The Court: One way or the other is what you're saying?

The State: Right.

Defense Counsel: I can tell you all the plea offers assumed it was an aggravated.

The Court: Is that accurate?

The State: That's accurate.

The Court: All right.... So that's why I was asking you what—you're claiming surprise and that we shouldn't—well, you don't want it done, but I'm going to allow it to be done, so now what's your request, if any, as to how we proceed here today?

A discussion was held off the record concerning a plea bargain. Defense counsel then stated:

I would like to also put on the record for the record that this is the first discussion we've had about this being a felony. This is the first discussion that Mr. Jentz and I have ever had that this is a felony. I have never informed him until now that this was a potential felony.

When asked if there was something he was asking the court to do, he responded: "No. No. I'm just making that part of the record for potential ineffective assistance claim."

In his motion in arrest of judgment, Jentz argued: "The State's decision to initially charge Defendant with an aggravated misdemeanor ... then pursuing a felony mid-Trial without amending the Trial Information" violated Jentz's sixth and fourteenth amendment rights "to be informed of the nature of the charge against him." He further argued this affected his decision to go to trial, and "[t]he State has never amended the Trial Information to reflect that the charge is a felony and can no longer do so, because the jury has already returned its verdict." He also asserted this interpretation was contrary to Iowa Code section 124.401(5).

In its ruling denying the motion, the court stated:

> The Defendant's motion raises the same issues he raised during the course of the trial. . . . The Defendant argues that this interpretation of Section 124.401(5) of the Code constitutes an "amendment" of the charge. In Count II of the Trial Information, the charge has remained the same since it was filed February 16, 2011. While it is correct that the prosecutor and the Defendant and even the Court apparently had been treating Count II as a potential aggravated misdemeanor, the charge itself and facts alleged have never changed. What changed was an assumption the State and Defendant both appear to have had

without actually checking the nature of the predicate offenses and how those offenses fit with Section 124.401(5).

The court never specifically addressed the constitutional issues of whether this alleged amendment affected Jentz's right to know the charges against him and to due process. No motion to amend or enlarge was filed.

At no point in time during the trial did Jentz raise either constitutional argument. While the issue of Jentz's right to know the charges against him was included in his motion in arrest of judgment, it was never raised during trial, the district court did not address the issue in its ruling, and no motion to amend or enlarge was filed, which is required to preserve error. *See Lamasters*, 821 N.W.2d at 864. Moreover, we find the district court did not consider a constitutional challenge on the right-to-know claim because the court neither addressed the specific constitutional issue Jentz now raises on appeal at trial, nor in its ruling on Jentz's motion in arrest of judgment. The court's response to Jentz's objections at trial, which consisted of "that's why I was asking you what—you're claiming surprise and that we shouldn't—well, you don't want it done, but I'm going to allow it to be done," is not enough to show it considered Jentz's constitutional argument. *See Krogmann*, 804 N.W.2d at 523 (the defendant failed to preserve error on his constitutional claim because he did not raise any constitutional argument before the district court); *State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) (stating that "[a] party challenging the constitutionality of a statute must alert the court to what specific constitutional provisions are allegedly compromised by the statute.") (internal citations omitted).

Nor is it clear the court considered Jentz's sixth and fourteenth amendment argument in its ruling on Jentz's motion in

arrest of judgment—Jentz presented the change in the level of crime and the right-to-know claims as distinct issues, and the ruling only addressed the change in the level of the crime. Furthermore, nothing in the record indicates Jentz's violation of due process claim was ever considered by the district court. Consequently, we find error was not preserved on either argument.

■ However, even if we were to find error was preserved, no structural error occurred requiring reversal as a matter of right. With regard to the actual trial, which was administered as a misdemeanor rather than a felony trial, Jentz did not receive the appropriate amount of peremptory strikes. However, this is not a constitutionally mandated right, and Jentz failed to establish that prejudice resulted from this error. *See Brecht v. Abrahamson,* 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (holding structural error is limited to instances that include biased judges, complete denial of criminal defense counsel, denial of self-representation, defective reasonable doubt jury instruction, exclusion of jurors of the defendant's race from grand jury selection, excusing a juror because of views on capital punishment, and denial of a public trial); *Lyons v. United States,* 683 A.2d 1066, 1071 (D.C.Ct.App. 1996) ("[A]ny error relating to the use of peremptory challenges cannot be regarded as a 'structural defect.'"); *State v. Di Frisco,* 137 N.J. 434, 645 A.2d 734, 753 n. 1 (N.J.1994) (holding that in order to win reversal, defendant must show that "a juror who was partial" sat as a result of a loss of a peremptory challenge, and noting that several federal circuits and twenty-two states have held "that a peremptory challenge is not a fundamental constitutional right.").

■■ Furthermore, a simple mislabeling of "AG" on the trial information indicating the charge is considered an aggravated misdemeanor does not necessitate an amendment of the trial information if it is later discovered the notation was incorrect. The purpose of a trial information is to apprise the defendant of the charges asserted against him so he may adequately prepare a defense. *See State v. Griffin,* 386 N.W.2d 529, 531 (Iowa Ct.App.1986). When only a simple notation is incorrect regarding the offense level, it is not necessary to amend the trial information. This is a logical result considering neither the underlying charge nor the facts were changed, and the purpose of alerting the defendant of the charges against him was achieved. *See* Iowa R.Crim. P. 2.4(7)(b), 2.5(5) (stating the indictment or trial information need only provide "[t]he name and if provided by law the degree of the offense, identifying by number the statutory provision or provisions alleged to have been violated."); *Jackson v. State,* 316 Ga. App. 588, 730 S.E.2d 69, 74 (Ga.Ct.App. 2012) (holding the charge survived a general demurrer even though the offense level was mislabeled in the indictment, particularly given the statute and underlying facts were never changed).

### III. Legality of Jentz's Sentence

■ Jentz further argues the court imposed an illegal sentence when it sentenced Jentz to a five-year term, as treatment of the possession offense as a class "D" felony is contrary to the language and intent of Iowa Code section 124.401(5). We review the illegality of a sentence, as well as matters of statutory interpretation, for correction of errors at law. *State v. Freeman,* 705 N.W.2d 286, 287 (Iowa 2005); *State v. Carpenter,* 616 N.W.2d 540, 542 (Iowa 2000). In interpreting a statute:

> Our ultimate goal ... is to discover the true intention of the legislature. In

searching for legislative intent, we consider not only the language of the statute, but also its subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of various interpretations. Additionally, we construe a statute in a way that would avoid impractical or absurd results. And we look at the whole statute, not just the separate parts.

*State v. Albrecht,* 657 N.W.2d 474, 479 (Iowa 2003) (citations omitted).

Jentz asserts he should have been sentenced to an aggravated misdemeanor pursuant to the second paragraph of subsection five, given all of his previous offenses involved marijuana. Jentz maintains his position is consistent with *State v. Cortez,* 617 N.W.2d 1, 3 (Iowa 2000), and that the State's interpretation of this subsection would lead to illogical results, that is, an escalating offender could conceivably receive less punishment than a defendant whose crimes become less serious.

The State responds the plain language of the statute authorizes Jentz's sentence. Because his previous offense involved the manufacture of marijuana, which is a violation of Iowa Code section 124.401(1)(d), his conduct and previous offenses align with the first paragraph, rather than the more lenient second paragraph. This interpretation of section five as applied to Jentz comports with *State v. Rankin,* 666 N.W.2d 608, 611 (Iowa 2003), which controls.

Iowa Code section 124.401(5) states:

It is unlawful for any person knowingly or intentionally to possess a controlled substance unless such substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this chapter. Any person who violates this subsection is guilty of a serious misdemeanor for a first offense. A person who commits a violation of this subsection and who has previously been convicted of violating this chapter or chapter 124A, 124B, or 453B is guilty of an aggravated misdemeanor. A person who commits a violation of this subsection and has previously been convicted two or more times of violating this chapter or chapter 124A, 124B, or 453B is guilty of a class "D" felony.

If the controlled substance is marijuana, the punishment shall be by imprisonment in the county jail for not more than six months or by a fine of not more than one thousand dollars, or by both such fine and imprisonment for a first offense. If the controlled substance is marijuana and the person has been previously convicted of a violation of this subsection in which the controlled substance was marijuana, the punishment shall be as provided in section 903.1, subsection 1, paragraph "b." If the controlled substance is marijuana and the person has been previously convicted two or more times of a violation of this subsection in which the controlled substance was marijuana, the person is guilty of an aggravated misdemeanor.

Iowa Code § 124.401(5).

The two cases cited by the parties are instructive in interpreting this statute. In *Rankin,* the defendant was previously convicted of possession with intent to distribute, which the supreme court interpreted to be an accommodation offense pursuant to Iowa Code section 124.410. 666 N.W.2d at 609–10. For the possession charge at issue in the case, the defendant argued he should have been charged with a serious misdemeanor, pursuant to the second paragraph of Iowa Code section 124.401(5); however, the supreme court interpreted

the words "this subsection" in the second paragraph to mean the second paragraph only applies when the defendant's previous conviction was charged as a violation of Iowa Code section 124.401(5). *Id.* at 610. Because his previous conviction was a violation of section 124.410, the defendant was properly charged with an aggravated misdemeanor, pursuant to the first paragraph. *Id.* at 611.

In *Cortez*, the defendant had one prior charge for possession of marijuana and another for possession of methamphetamine. 617 N.W.2d at 3. The supreme court held the defendant's current possession of marijuana charge was properly classified as a class "D" felony, as the second, more lenient paragraph of section 124.401(5) only applies when the previous convictions involved marijuana. *Id.*

We agree with the State's contention that *Rankin* controls our analysis. While Jentz's two previous offenses both involved marijuana, his possession with intent to distribute conviction was a violation of Iowa Code section 124.401(1)(d). This conviction is not a violation of subsection five. Therefore, pursuant to *Rankin*, Jentz does not fall within the purview of the second paragraph, because he was not "convicted two or more times of a violation of *this subsection*...." Iowa Code § 124.401(5) (emphasis added); *see also Rankin*, 666 N.W.2d at 611. As such, he was properly convicted of a class "D" felony pursuant to the first paragraph, and his five-year sentence was not illegal.

## IV. Ineffective Assistance of Counsel

Jentz next asserts trial counsel was ineffective for failing to advise him the possession offense could be a class "D" felony. He states he was prejudiced because he would have accepted the plea offer to an aggravated misdemeanor had he known the correct nature of the charge.

A defendant may raise an ineffective assistance claim on direct appeal if the record is adequate to address the claim. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We may either decide the record is adequate and issue a ruling on the merits, or we may choose to preserve the claim for postconviction proceedings. *Id.* We review ineffective assistance of counsel claims de novo. *Id.* To succeed on this claim, the defendant must show, first, that counsel breached an essential duty, and, second, that he was prejudiced by counsel's failure. *Id.* Under the first prong, counsel's performance is measured "against the standard of a reasonably competent practitioner with the presumption that the attorney performed his duties in a competent manner." *Id.* (internal citations omitted).

Additionally, the Supreme Court has held defendants are entitled to effective assistance of competent counsel during plea negotiations. *Lafler v. Cooper*, — U.S. ——, ——, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012). However, in a case where a plea was rejected and the defendant was convicted at trial, to establish he was prejudiced by counsel's failure, the defendant must show that:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385.

Here, defense counsel made the following statement during trial:

I would like to also put on the record for the record that this is the first discussion we've had about this being a felony. This is the first discussion that Mr. Jentz and I have ever had that this is a felony. I have never informed him until now that this was a potential felony.

Upon review of the record, it appears neither the court nor counsel were aware until the beginning of the second phase the possession offense was classified as a class "D" felony. While we could find counsel was ineffective, we are hesitant to do so without counsel being afforded the opportunity to speak in his own defense. *See State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004) ("Ordinarily, ineffective assistance of counsel claims are best resolved by postconviction proceedings to enable a complete record to be developed and afford trial counsel an opportunity to respond to the claim."). We also note there were plea negotiations held off the record after the level of the offense was discussed, and bringing those discussions to light may militate against any finding of ineffectiveness. *See State v. Brothern*, 832 N.W.2d 187, 197 (Iowa 2013) (preserving the defendant's ineffective assistance claim for postconviction relief proceedings because an amendment to the trial information that was filed late could have affected plea negotiations, though not the defendant's trial strategy). Therefore, this claim is preserved for possible postconviction relief proceedings, where a more complete record may be established. *See Straw*, 709 N.W.2d at 133.

## V. Motion for Judgment of Acquittal

▆ Jentz further argues the district court erred in denying his motion for a judgment of acquittal, because the State did not provide enough evidence he was the person who committed the crimes that served as a basis for the penalty enhance-ment. Jentz asserts the fact he shared the same name and date of birth as the defendant in the previous cases is not enough to constitute substantial evidence supporting the jury's verdict.

▆ We review a challenge to the sufficiency of the evidence for correction of errors at law. *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997). The finding of guilt is binding as long as substantial evidence supports this finding, which occurs when a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt. *Id.* While we consider all the evidence, we review the evidence in the light most favorable to the State, "including all legitimate inferences and presumptions which may be fairly and reasonably deduced from the ... record." *Id.* (internal citation omitted).

▆ When previous convictions enhance a penalty, a second trial must be held to establish whether the defendant did in fact commit the previous crimes. *See* Iowa R.Crim. P. 2.6(5). In the second phase, "the State must prove the prior convictions ... by introducing certified records of the convictions, along with evidence that the defendant is the same person named in the convictions." *State v. Kukowski*, 704 N.W.2d 687, 691 (Iowa 2005). Our supreme court has held substantial evidence supports the finding the defendant was the person convicted when the previous criminal record contains a name, a social security number, and date of birth that match those of the defendant. *State v. Sanborn*, 564 N.W.2d 813, 816 (Iowa 1997). The uniqueness of a defendant's name reinforces the finding of identity; however, a name alone is not enough to prove the defendant was the one previously convicted. *State v. Post*, 251 Iowa 345, 99 N.W.2d 314, 317–18 (Iowa 1959) (holding a unique name, "Omer E. Post," in combination with an officer's testimony

the defendant was the same man he previously arrested, was sufficient proof of identity); *State v. Smith*, 129 Iowa 709, 106 N.W. 187, 189 (Iowa 1906) (the name John Smith, alone, was not enough to prove the identity of the defendant).

Here, the State submitted three certified records of conviction. The first, a conviction for possession of a controlled substance in 2003 from Dubuque County, listed Justin Robert Jentz as the defendant, with a date of birth of June 16, 1983. The second conviction for possession of marijuana in 2005, out of Louisa County, charged Justin Robert Jentz, and listed the birth date as June 16, 1983. The third conviction from Muscatine County for manufacturing marijuana also listed Justin Robert Jentz, with a birth date of June 16, 1983, as the defendant. The trial information in this case lists Justin Robert Jentz as the defendant, with a birth date of June 16, 1983. None of the records contain the same address for the defendant. No testimony was offered, and the State submitted no further evidence to prove Jentz's identity.

Viewing the evidence in the light most favorable to the State, we find substantial evidence supports the jury's conclusion Jentz committed these crimes. The fact scenario presented here falls in between the *Sanborn* and *Smith* cases. However, we find the exact same name, which is in itself unique, combined with the birth date and the fact these crimes were all committed in eastern Iowa, is sufficient proof of identity such that a reasonable trier of fact could conclude beyond a reasonable doubt Jentz committed these crimes. *See Post*, 99 N.W.2d at 317–18. Therefore, we affirm the district court's denial of Jentz's motion for a judgment of acquittal.

## VI. Speedy Trial

 Jentz's final argument asserts the district court erred in denying his motion to dismiss for failure to bring him to trial within one year of arraignment and that good cause did not exist for the delay. The State responds Jentz waived his right to a speedy trial, as there was a court order recalling a warrant for failure to appear stating "Defendant now waives speedy trial in all cases." The State further argues good cause existed. The State alleges the delay was attributable to Jentz fleeing to Florida and incurring other criminal charges, and "[u]ntil that time [when Iowa officials received notice Jentz was available to be transported back to Iowa], Jentz was not available to Iowa authorities even though he had executed the waiver of extradition." The district court agreed and denied the motion to dismiss.

 We review a trial court's ruling on a motion to dismiss based on speedy trial grounds for an abuse of discretion. *State v. Winters*, 690 N.W.2d 903, 907 (Iowa 2005). However, the discretion given to the district court is narrowed "to the exceptional circumstance where the State carries its burden of showing good cause for the delay." *Id.* at 907–08. As such, our review on appeal is similarly narrowed. *Id.* at 908.

 Iowa Rule of Criminal Procedure 2.33(2)(c) states: "All criminal cases must be brought to trial within one year after the defendant's initial arraignment pursuant to rule 2.8 unless an extension is granted by the court, upon a showing of good cause." Under this rule, the trial may only proceed outside of the one-year deadline if the State proves (1) the defendant waived speedy trial, (2) the delay was attributable to the defendant, or (3) good cause existed for the delay. *Winters*, 690 N.W.2d at 908. Good cause "focuses on only one factor: the reason for the delay."

*Id.* (internal citation omitted). We further note:

> The attending circumstances "bear on the inquiry only to the extent they relate directly to the sufficiency of the reason itself." Surrounding circumstances include: (1) the length of the delay, (2) whether the defendant asserted his or her right to a speedy trial, and (3) whether prejudice resulted from the delay.

*Id.* (quoting *State v. Nelson,* 600 N.W.2d 598, 601 (Iowa 1999)). Thus, the appropriate inquiry is "whether events that impeded the progress of the case and were attributable to the defendant or to some other good cause for delay served as a matter of practical necessity" for the delay. *State v. Campbell,* 714 N.W.2d 622, 628 (Iowa 2006).

Here, the State filed the trial information on February 16, 2011, and Jentz was arraigned the same day. Trial was initially scheduled for April 18, 2011. Jentz failed to appear for a final pretrial conference in April, so a warrant was issued for his arrest. The court later quashed the warrant, and in the order stated: "Defendant now waives speedy trial in all cases."[1] The final pretrial conference was scheduled for June 2, 2011, which was later reset to August 18, 2011, then September 15, 2011. Jentz failed to appear for the September final pretrial conference, and on September 16, 2011, a warrant was issued for failure to appear for both this case and a domestic abuse charge.

On October 26, 2011, Jentz was arrested in the State of Florida and charged with "aggravated battery on a pregnant person," which carried a maximum penalty of fifteen years imprisonment. Bail was granted, but after Jentz made arrangements with a bail bondsman, the bondsman refused the money on the basis of the outstanding warrants in Iowa. Jentz executed a waiver of extradition on November 7, 2011, consenting to be returned to Iowa. On April 5, 2012, Jentz pleaded guilty to a lesser charge in the Florida case, "felony battery," and was sentenced to time served. On April 18, 2012, after being notified Jentz was to be released on the Florida charges, Iowa authorities transported Jentz back to Iowa, and he appeared in Dubuque County on April 25, 2012.

During the hearing on Jentz's motion to dismiss, the following exchange with regard to Jentz's trip to Florida took place:

> Q: And you knew you had cases pending in Iowa, did you not? A: Yes, sir.
>
> Q: And you left the State of Iowa to go to Florida? A: Yes, I went down there on vacation.
>
> Q: And when did you leave Iowa? A: Sometime in August I believe.
>
> Q: And you were arrested in Florida on October 26th of 2011; is that right? A: Yes, sir.

After hearing the testimony, regarding the statement Jentz went to Florida on vacation, the district court noted: "The Court does not find this testimony credible."

With respect to the State's first argument, Jentz's waiver of his ninety-day speedy trial right under Iowa Rule of Criminal Procedure 2.33(2)(b) does not necessarily operate to waive his right to a one-year speedy trial. *See generally State v. Mary,* 401 N.W.2d 239, 241 (Iowa Ct. App.1986) (holding a waiver of the ninety-

---

1. This order contains two different case numbers, the first being the case at issue here, the second listed as SRCR93404–94130. For purposes of clarity, we note the second case was later joined with this case. Additionally, the court specifically noted Jentz waived speedy trial "in all cases," which includes the case at hand.

day speedy trial right does not automatically operate to waive defendant's right to a one-year speedy trial). Moreover, the "waiver" cited by the State is a notation on an order, and no further record accompanies it. This is not enough evidence showing Jentz waived his right to a one-year speedy trial pursuant to Iowa Rule of Criminal Procedure 2.33(2)(c). This conclusion is reinforced by subsequent orders that continued to state: "The last day for speedy trial is ... 2–15–12" (for the possession charge) and "2–16–12" (for the OWI charge). Therefore, we will address whether good cause existed for the delay.

Jentz relies on the Uniform Criminal Extradition Act, to which both Iowa and Florida belong, which provides:

> When it is desired to have returned to this state a person charged in this state with a crime, and such person is imprisoned or is held under criminal proceedings then pending against the person in another state, the governor of this state *may* agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings or the person's term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this state as soon as the prosecution in this state is terminated.

Iowa Code § 820.5 (emphasis added). Jentz maintains his consent to extradition in November 2011 served as the time when Iowa could retrieve him from Florida pursuant to this Act, rendering any delay not attributable to him.

However, there are several problems with this argument. Were we to follow Jentz's logic, a defendant could flee to another state, incur criminal charges, and while those were being resolved, avoid the criminal prosecution in his home state based on speedy trial grounds if the second state refused to release him, or if the governor did not exercise the discretionary ability to request the defendant's release. As the State noted, it is simply unrealistic to require Florida to forego its prosecution, potentially violating its own speedy trial rules, to send Jentz to Iowa then back to Florida upon the resolution of the Iowa charges, but claim Iowa is violating its speedy trial rules if Florida refuses to do so. This is especially pertinent given Jentz voluntarily left for Florida, knowing he had several cases pending in Iowa, with notice of scheduled pretrial and trial dates. As our supreme court has noted: "The State's duty to provide a defendant a speedy trial does not require that it play a game of hide-and-go-seek with him." *State v. Lyles,* 225 N.W.2d 124, 126 (Iowa 1975). Moreover, several of our sister states have also held when a defendant is awaiting trial in another state that either the speedy trial rule does not apply or good cause exists for any delay. *See People v. Thomas,* 296 Ill.App.3d 489, 230 Ill.Dec. 790, 694 N.E.2d 1068, 1077 (Ill.Ct. App.1998) (concluding good cause existed for the delay because the defendant was awaiting trial on an unrelated charge in another state); *Howard v. State,* 755 N.E.2d 242, 248 (Ind.Ct.App.2001) (holding the state's speedy trial rule does not apply when a defendant is being held in another state pending criminal charges).[2] We, too, find the resolution of the Florida prosecution constituted good cause for the delay.

---

**2.** Some states come to the opposite conclusion, that is, a defendant's right to a speedy trial can still be violated even if the defendant is being held in another state because of criminal charges incurred in that state. *See, e.g.,* *State v. Groth,* 483 So.2d 596, 601 (La.1986); *Commonwealth v. Alexander,* 318 Pa.Super. 344, 464 A.2d 1376, 1382–83 (Pa.1983). However, we decline to follow the rule espoused by these states.

Furthermore, we find it persuasive the district court did not consider Jentz's testimony he went to Florida for vacation credible. *See State v. Liggins,* 524 N.W.2d 181, 186 (Iowa 1994) ("[T]he court's findings on credibility of the witnesses are entitled to considerable deference."). The timing of events aids in the conclusion Jentz went to Florida to avoid the Iowa prosecution—Jentz was arrested in Florida in October, after leaving for Florida in August. Even before he was arrested, his trip to Florida caused him to miss his September final pretrial conference. Though he admitted to knowing he had several trial dates pending for which he was to appear, he went to another state, which resulted in a warrant being issued for failure to appear. We note a defendant "may not actively, or passively, participate in the events which delay his trial and then later take advantage of that delay to terminate the prosecution." *State v. Finn,* 469 N.W.2d 692, 694 (Iowa 1991). In keeping with this rationale, we find the delay was attributable to Jentz's act of traveling to Florida. Alternatively, the resolution of the Florida prosecution serves as good cause for the delay, as well as a matter of practical necessity. *See Campbell,* 714 N.W.2d at 628. Therefore, we affirm the district court's denial of Jentz's motion to dismiss based on speedy trial grounds.

Having considered all issues raised on appeal, we affirm Jentz's convictions and sentences.

**AFFIRMED.**

DANILSON, J., concurs; TABOR, J., dissents.

TABOR, J. (dissenting).

I respectfully dissent. The State did not notify Jentz he was being tried on a felony charge, yet he received a felony conviction. After Jentz's conviction, the prosecutor acknowledged the pretrial plea offers extended to Jentz assumed he was charged with an aggravated misdemeanor offense. At sentencing, Jentz stated he would have accepted the prosecution's plea offer of one year of incarceration on the drug offense rather than going to trial if he had known he faced a felony offense.

Moreover, Jentz did not receive the correct number of peremptory strikes for a felony trial during jury selection. *See* Iowa R.Crim. P. 2.18(9) (providing six strikes for each side in class "D" felony cases and four strikes in misdemeanor cases). Peremptory strikes serve as a safeguard against unjust convictions. *State v. Mootz,* 808 N.W.2d 207, 223 (Iowa 2012). Our supreme court has recognized the value of allowing defendants to use all of their peremptory challenges. *Id.* at 225 (recognizing preemptory challenges allow parties to eliminate jurors perceived to harbor subtle biases or not removable by a challenge for cause); *see also Commonwealth v. Hampton,* 457 Mass. 152, 928 N.E.2d 917, 927 (Mass.2010) (recounting "venerable" history of peremptory challenges in state court jurisprudence as a means of eliminating extremes and thereby assuring the selection of an unbiased jury); *People v. Hecker,* 15 N.Y.3d 625, 917 N.Y.S.2d 39, 942 N.E.2d 248, 272 (N.Y. 2010) (noting "[f]rom earliest times the right of peremptory challenge was the privilege of the accused" and "peremptory challenges are a mainstay" of a "strategic arsenal" protected by criminal procedure law).

In *Mootz,* our supreme court determined a violation of rule 2.18(9) "requires automatic reversal of a defendant's conviction" in the context of the trial court's mistaken denial of a defendant's peremptory strike as a result of the trial court's erroneous ruling on a reverse challenge under *Bat-*

*son v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Mootz,* 808 N.W.2d at 226 (noting *Rivera v. Illinois,* 556 U.S. 148, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009), held mistaken denial of peremptory strike was not structural error under the federal constitution, and *Rivera* recognized the possibility of *automatic* reversal on state law grounds). If, as in *Mootz,* it is presumed prejudicial to allow an objectionable juror to serve when the defendant tried to exercise a peremptory strike, it also should be presumed prejudicial not to afford the defendant the number of peremptory strikes required by our rules of criminal procedure. The logical extension of *Mootz* requires automatic reversal in this case.