# IN THE COURT OF APPEALS OF IOWA

No. 20-1098
Filed February 16, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**QUINTARIUS BROWN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Andrea Dryer, Judge.

Defendant appeals his convictions and sentences for first-degree murder and first-degree robbery. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Heard by Schumacher, P.J., Badding, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**SCHUMACHER, Presiding Judge.**

Quintarius Brown appeals his convictions and sentences for first-degree murder and first-degree robbery. We find the district court did not err by overruling Brown's hearsay objections. The court did not abuse its discretion by permitting the State to present evidence of Brown's Facebook messages or a video Brown sent to a friend. The court properly denied Brown's motion for new trial. The court did not abuse its discretion in ordering Brown to serve consecutive sentences. We affirm Brown's convictions and sentences.

## I. Background Facts & Proceedings

Brown was charged with murder in the first degree, in violation of Iowa Code sections 707.1 and 707.2 (2017), and robbery in the first degree, in violation of section 711.2. The State alleged that on December 11, 2017, Brown entered the home of Cedric Craft with the intent to steal cash and marijuana and shot Craft during the course of the robbery.

Brown's jury trial commenced on February 4, 2020. From evidence presented during the trial, the jury could find the following facts. Brown's girlfriend, who was dating Brown during November and December 2017, testified Brown had a "cop gun" at Thanksgiving that year. Brown also showed her a video of himself with the gun. She testified that Brown, who was sixteen years old on December 11, 2017, was a close friend of T.G., who was then fourteen years old.

Craft sold small amounts of marijuana from his home. He usually had marijuana and about $4000 cash in the home. Craft's girlfriend testified Brown sometimes purchased marijuana from Craft. She stated that in the week before December 11, there was a conflict between Craft and Brown. In the week before

December 11, T.G. sent Brown a text message asking to see the gun. Brown sent him a video showing Brown with a .380 pistol.

On December 11, Brown sent T.G. a message through Facebook Messenger stating he was "piped up," meaning he was carrying a gun. Brown also stated, "When it get dark then we gone get this cash and then get sum gas and we finna shoot out of town." Brown told T.G. to wear dark colors. T.G. also received a Facebook message from Brown stating, "I'm trynna hit sum licks and I got and 380 on me right now," and "a person we can stain me and u." Both "lick" and "stain" refer to a robbery.

Brown and T.G. met with two of Brown's uncles near a convenience store in Waterloo.[1] They observed Craft enter the convenience store, purchase some food, and then leave again. Brown said something to Craft, and Craft responded that Brown knew where he lived.

Craft's adult daughter was living with her father on December 11. After they ate sandwiches her father purchased at the convenience store, Craft's daughter took a bath. She heard her father talking to someone, so she went directly upstairs to her room after her bath. Craft's daughter heard two gunshots. She hid in her closet and texted friends, asking them to call the police. T.G. testified that he was outside Craft's home while Brown and one of the uncles entered the home. T.G. heard two gunshots, and Brown and an uncle ran out of the house.

Police officers arrived within a few minutes and blocked off the street in front of Craft's home while they processed the crime scene. They found Craft had been

---

[1] The uncles are not specifically identified in the record. It is not clear if they were, in fact, Brown's uncles. The State was unable to locate these individuals.

shot in the head with a .380 pistol. He died as a result of the gunshot wound. The handle of a knife was sticking out of Craft's pocket.

In the meantime, T.G. and Brown ran back to T.G.'s house after the shooting. T.G.'s brother, D.G., was sitting in a car outside the house with D.G.'s girlfriend. Brown was visibly excited and said he "smoked" someone. D.G.'s girlfriend drove D.G., T.G., and Brown to the area of Craft's house, where they saw the streets were blocked. D.G.'s girlfriend testified Brown laughed and said he shot Skee in the head. Skee was a nickname for Craft. D.G. and T.G. testified Brown stated he shot Craft because Craft tried to pull a knife out. Brown, D.G., and T.G. smoked some marijuana that Brown said he got from Craft's house.

T.G.'s girlfriend testified T.G. was very nervous that evening. When she asked what was wrong, he showed her an article on Facebook about the shooting. The next day, Brown told D.G. and T.G. to delete their messages from him. About two weeks after the shooting, Brown told T.G.'s girlfriend, "I killed him." She stated Brown "was laughing. He thought it was funny, smiling the whole time."

Brown was arrested on August 30, 2018. Information on his cell phone was missing from December 9 to 13, 2017. Police officers did not recover the gun used to kill Craft.

Brown presented the testimony of Datarius Spates, who knew T.G. from the State Training School. Spates testified he got into an argument with T.G., who told him he would shoot Spates like he shot Craft. According to Spates, T.G. stated he went into the house with Brown and they both shot Craft.

The jury found Brown guilty of first-degree murder and first-degree robbery. The court denied Brown's motion for a new trial. The court sentenced Brown to

life in prison on the charge of first-degree murder and a term of imprisonment not to exceed twenty-five years on the charge of first-degree robbery, to be served consecutively.[2] Brown now appeals.

## II. Hearsay

Prior to trial, Brown filed a motion in limine requesting that the State be prohibited from offering hearsay statements. The court ruled the State could not disclose any potential hearsay evidence "until further offers of proof and further objections have been made to the court prior to final rulings on admissibility."

During the trial, Craft's daughter testified she heard someone say, "Give me all you got." No objection was made to the testimony. Craft's daughter was then asked about her father's response. Brown objected on the grounds of hearsay. In an offer of proof, Craft's daughter testified Craft stated, "On my daughters, that's all I have." Craft's daughter stated someone said, "No, it ain't."

At the completion of the offer of proof, Brown again objected on hearsay grounds, stating, "[A]ll of this, whether it's their statements coming from her father or some other unknown individual, is hearsay." The State claimed the statements were not presented for the truth of the matter asserted, but to show the conduct of the parties during the course of the robbery. The district court ruled:

> I am going to overrule the objection made by the defense. The defense's objection was that the statements were hearsay. I agree there's no evidence that they were Mr. Brown's statements in the record. However, I am accepting the State's position that they are admissible under [Iowa Rule of Evidence] 5.801(c), and I am going to allow them on that basis.

---

[2] Because Brown was not an adult at the time of the offenses, the sentences did not include a mandatory minimum term of confinement. *See State v. Harrison*, 914 N.W.2d 178, 189 (Iowa 2018) ("[T]he Iowa Constitution prohibits all mandatory minimum prison sentences for juvenile offenders.").

Craft's daughter testified in front of the jury concerning the statements she overheard.

Brown contends the district court erred by overruling his hearsay objection to Craft's daughter's testimony. We first note there is an error-preservation issue because Brown did not object to Craft's daughter's testimony that she heard someone say, "Give me all you got." *See State v. Jentz*, 853 N.W.2d 257, 262 (Iowa Ct. App. 2013) (noting that a party must make an objection in a timely manner in order to preserve error).

Brown contends that he was not required to object because under the ruling on the motion in limine, the State was first required to make an offer of proof before it could offer any potential hearsay evidence. Brown did not claim during the jury trial that the State should have made an offer of proof before eliciting Craft's daughter's statement that someone said, "Give me all you got," to her father. Because the issue was not raised, the court did not make a ruling on whether the State breached the ruling on the motion in limine. *See State v. Zacarias*, 958 N.W.2d 573, 587 (Iowa 2021) (noting that in order for error to be preserved, issues must be both raised to and decided by the district court). Therefore, the issue was not preserved for appeal. However, even if the issue had been preserved, as we discuss below, the statement was not inadmissible hearsay.

Brown claims Craft's daughter's statements were not admissible because they were hearsay. He asserts that the primary purpose of the testimony was to prove the truth of the matter asserted—that someone was demanding something

from Craft. Brown asserts that he was prejudiced by the admission of Craft's testimony.

Under Iowa Rule of Evidence 5.801(c),

> "Hearsay" means a statement that:
> (1) The declarant does not make while testifying at the current trial or hearing; and
> (2) A party offers into evidence to prove the truth of the matter asserted in the statement.

Hearsay statements are generally not admissible. Iowa R. Evid. 5.802. We review the district court's rulings on matters of hearsay for the correction of errors at law. *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006).

Even if Brown made a timely objection to Craft's daughter's statement that she heard someone tell Craft, "Give me all you got," the statement is not inadmissible hearsay because it was a command, not "an assertion of fact." *See State v. Leonard*, 243 N.W.2d 887, 890 (Iowa 1976) ("An out-of-court utterance is not hearsay unless it contains an assertion of fact and is offered to prove the truth of that assertion."); *see also United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006) ("Questions and commands generally are not intended as assertions, and therefore cannot constitute hearsay."); *Bustamante v. State*, 557 N.E.2d 1313, 1316 (Ind. 1990) ("True requests, commands, and questions are not assertions, and evidence regarding such utterances may come in because they are not offered for the truth of the facts asserted.").

Brown made a timely hearsay objection to the statements, "On my daughters, that's all I have," and "No, it ain't." The State contends the statements were not hearsay because they were not presented for the truth of the matter asserted.

If a statement is not presented to prove the truth of the matter asserted, it is not hearsay. *State v. Plain*, 898 N.W.2d 801, 812 (Iowa 2017). "[W]hen an out-of-court statement is offered, not to show the truth of the matter asserted but to explain responsive conduct, it is not regarded as hearsay." *State v. Banes*, 910 N.W.2d 634, 642 (Iowa Ct. App. 2018) (alteration in original) (citation omitted). The court considers "whether the statement is truly relevant to the purpose for which it is being offered, or whether the statement is merely an attempt to put before the fact finder inadmissible evidence." *State v. Elliott*, 806 N.W.2d 660, 668 (Iowa 2011) (quoting *State v. Mitchell*, 450 N.W.2d 828, 832 (Iowa 1990)).

We find the statements were not offered for the truth of the matter asserted. The statements were not presented to show whether Craft gave the robbers all he had or whether he had more marijuana and cash that he did not give them. "[T]he making of the remark was relevant evidence without reference to its truth or falsity." *See Leonard*, 243 N.W.2d at 890. Because Craft's daughter's testimony "was received without reference to the truth or falsity of any assertion in it," the statements were admissible. *See id.* at 891. We conclude the court did not err by overruling Brown's hearsay objection.

### III. Facebook Exhibits

Brown communicated with T.G. through Facebook Messenger. Investigator Brice Lippert testified officers sent a search warrant to Facebook for the accounts of Brown, T.G., and D.G. Facebook sent the police department certified information from these accounts. During the trial, the State submitted the

certifications of authenticity for these Facebook records.[3] Brown did not object to the admission of the certificates.

Investigator Lippert testified that some messages sent by Brown to T.G. were deleted from Brown's Facebook account but were present in T.G.'s Facebook account. These messages included the statements, "I'm trynna hit sum licks and I got and 380 on me right now," and "a person we can stain me and u."

**A.** Brown objected to exhibits containing the messages on the ground of lack of foundation. The court overruled the objection. Brown claims the court abused its discretion by overruling his foundation objection. We will reverse the court's ruling only if there has been an abuse of discretion. *Zacarias*, 958 N.W.2d at 580. There has been an abuse of discretion when the court's ruling is based on grounds that are "clearly untenable or clearly unreasonable." *State v. Donahue*, 957 N.W.2d 1, 6 (Iowa 2021) (quoting *Plain*, 898 N.W.2d at 811).

In order to authenticate evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Iowa R. Evid. 5.901(a). "Evidence that an electronic writing is what the proponent claims it is requires 'evidence sufficient to show that the purported author of the communication, whether it be an email, a Facebook posting, or a text message, actually authored or published the content.'" *State v. Acosta*, No. 19-0364, 2020

---

[3] The district court noted the Facebook certifications of authenticity were executed by the custodian of records for Facebook. The court found the certificates "verifie[d] that the records provided are an exact copy of the records that were made and kept by the automated systems of Facebook in the course of regularly-conducted activity as a regular practice of Facebook, and it explain[ed] how the records were saved and preserved." The certificate of authenticity contained a declaration "under penalty of perjury that the foregoing certificate is true and correct to the best of [the signer's] knowledge."

WL 7021516, at *2 (Iowa Ct. App. Nov. 30, 2020) (citation omitted). "Once the trial court determines this foundational requirement has been met, any speculation to the contrary affects the weight of the evidence rather than its admissibility." *State v. Akok*, No. 17-0655, 2018 WL 4362065, at *1 (Iowa Ct. App. Sept. 12, 2018).

In *Akok*, this court found there was a prima facie showing of authentication of Facebook messages that were sent from the account of a person identifying himself as the defendant and from a computer address the defendant had access to. *Id.* In *State v. Simpson*, Facebook posts were authenticated through testimony of a person who received the post, the post corresponded to the defendant's public Facebook page, and the contents related to the witness. No. 18-0666, 2020 WL 4812647, at *2 (Iowa Ct. App. Aug. 19, 2020). In *Acosta*, Snapchat messages were identified through the username of the person sending them, screenshots, as well as the timing and context of the messages. 2020 WL 7021516, at *3.

The Facebook account was in the name of Quintarius Brown. Investigator Lippert matched photographs from the Facebook account to photographs on Brown's cell phone. In addition, T.G. and Brown's girlfriend stated that conversations they had with Brown were the same as messages in the Facebook account. Both T.G. and Brown's girlfriend testified that they communicated with Brown through Facebook. We conclude the State established a prima facie showing of authentication. *See id.* We conclude the district court did not abuse its discretion in overruling Brown's foundational objection.

**B.** Brown also objected to the Facebook messages on the ground they were more prejudicial than probative. The State argued the messages were not unduly prejudicial because they showed a connection between Brown, T.G., and

a .380 pistol. The district court overruled the objection. Brown claims the court abused its discretion because the prejudicial effect of the messages outweighed any probative value.

Relevant evidence may be excluded if the danger of undue prejudice substantially outweighs the probative value of the evidence. Iowa R. Evid. 5.403. A two-part test is employed to determine whether evidence should be excluded under rule 5.403. *State v. Einfeldt*, 914 N.W.2d 773, 784 (Iowa 2018). "First, we consider the probative value of the evidence. Second, we balance the probative value against the danger of its prejudicial or wrongful effect upon the triers of fact." *Id.* (citation omitted). We will reverse the court's ruling only if there has been an abuse of discretion. *Zacarias*, 958 N.W.2d at 580.

"Probative value 'gauges the strength and force' of relevant evidence." *State v. Thompson*, 954 N.W.2d 402, 408 (Iowa 2021) (citation omitted). The Facebook messages were relevant to show the connection between Brown and T.G. and their plans to commit a robbery on December 11, 2017. In the messages, Brown stated he was carrying a .380 pistol, which was the type of weapon used to kill Craft. The messages were highly probative on the issues of identity and opportunity. *See United States v. Covelli*, 738 F.2d 847, 855 (7th Cir. 1984) ("[E]vidence of prior possession of a weapon can be used to prove opportunity and identification even where it cannot be directly identified as the weapon used in the crime.").

"[A]ll powerful evidence is prejudicial to one side." *State v. Neiderbach*, 837 N.W.2d 180, 202 (Iowa 2013). "The relevant inquiry is not whether the evidence is prejudicial or inherently prejudicial but whether the evidence is unfairly

prejudicial." *Thompson*, 954 N.W.2d at 408. Unfair prejudice occurs when evidence prompts a jury to make a decision on something other than the established propositions of the case. *See State v. Buman*, 955 N.W.2d 215, 221 (Iowa 2021). The information in the Facebook messages that Brown was carrying a gun and intended to commit a robbery was evidence relevant to this case; it was not evidence that would cause the jury to decide the case on an improper basis.

Generally, we defer to the district court's balancing of probative value against the prejudicial effect of evidence under rule 5.403. *Id.* This balancing "is not an exact science," and "we give a great deal of leeway to the trial judge who must make this judgment call." *Thompson*, 954 N.W.2d at 408 (citation omitted). We determine the court did not abuse its discretion by concluding the probative value of the evidence was not substantially outweighed by the danger of undue prejudice. *See* Iowa R. Evid. 5.403.

**C.** In an offer of proof, T.G. testified that on December 9, he sent Brown a message asking to see the .380 pistol. Within a few minutes, Brown sent T.G. a video that showed Brown holding a .380 pistol and pointing it at the camera. Investigator Nicholas Sadd testified concerning a Facebook video sent from Brown to T.G.'s cell phone. He stated the video file was on Brown's phone on December 5 and then posted to Facebook. Investigator Sadd testified it was unknown when the video was created. Lieutenant Aaron McClelland testified the gun in the video was a .380 automatic. Brown objected to the admission of the video on the ground it was too prejudicial. The court ruled the video was admissible because it was transmitted around the time of the offense.

Brown contends the district court abused its discretion by ruling the video was admissible. He claims the probative value of the video was outweighed by the danger of undue prejudice. He notes that there was no evidence concerning when the video was created. Brown argues the video is highly inflammatory because it shows him pointing the gun at the camera while smiling.

As discussed above, under rule 5.403, if the probative value of evidence is substantially outweighed by the danger of undue prejudice, the evidence should be excluded. We first consider the probative value of the evidence. *Einfeldt*, 914 N.W.2d at 784. Then, "we balance the probative value against the danger of its prejudicial or wrongful effect upon the triers of fact." *Id.* (citation omitted). The court's ruling will be reversed only if there has been an abuse of discretion. *Zacarias*, 958 N.W.2d at 580.

The video was relevant to show Brown had a .380 pistol on December 9, shortly before Craft was shot with a .380 pistol on December 11. There was other evidence in the record to show Brown had possession of a gun—including his own statements and his girlfriend's testimony that she saw Brown with a gun around Thanksgiving 2017. We conclude the video showing Brown in possession of a .380 pistol a few days before the shooting was not unduly prejudicial. Brown's concerns about the timing of when the video was created go to the weight of the evidence, not its admissibility. *See State v. Knox*, 464 N.W.2d 445, 449 (Iowa 1990). We find the court did not abuse its discretion by ruling the video was admissible.

## IV.     Motion for New Trial

Brown filed a motion for new trial, claiming the jury's verdict was contrary to the weight of the evidence.  Specifically, Brown argued the evidence does not show what actually occurred inside Craft's residence that would lead to the conclusion he was the person who shot Craft.  The district court denied the motion for a new trial.  Brown claims the court abused its discretion by denying his motion.

A new trial may be granted "[w]hen the verdict is contrary to law or evidence."  Iowa R. Crim. P. 2.24(2)(b)(6).  In considering a motion for new trial, the court looks at whether the jury's verdict is contrary to the weight of the evidence.  *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).  The court "may weigh the evidence and consider the credibility of witnesses."  *State v. Serrato*, 787 N.W.2d 462, 472 (Iowa 2010) (quoting *Ellis*, 578 N.W.2d at 658–59).  "'The district court has broad discretion in ruling on a motion for new trial,' and thus our review in such cases is for abuse of discretion."  *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006) (citation omitted).  "[T]he power to grant a new trial on this ground should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."  *Ellis*, 578 N.W.2d at 659 (citation omitted).

T.G.'s testimony showed Brown had a gun and planned to rob someone on the day of the shooting.  Brown was acquainted with Craft and knew he sold marijuana.  Brown and T.G. saw Craft go to the convenience store, and Brown spoke briefly to Craft.  T.G. testified he saw Brown enter Craft's house, heard two shots, and then saw Brown running from the house.  There was evidence Brown had a gun of the same caliber as the weapon used to shoot Craft.  Furthermore, Brown had marijuana he took from Craft's residence.

Very shortly after the shooting, Brown told D.G. and D.G.'s girlfriend that he "just smoked somebody," and said he shot Skee, which was Craft's nickname. D.G.'s girlfriend, Brown, D.G., and T.G. drove past the crime scene and saw the police cars. Also, Brown told T.G.'s girlfriend, "I killed him." Brown stated that Craft pulled a knife so he shot him. Officers found a knife sticking out of Craft's pocket and did not tell the public this information. Brown's knowledge about the knife shows his involvement in the shooting. Additionally, Brown told T.G. and D.G. to delete their messages. Brown's cell phone was missing data from December 9 to 13, which was around the date of the shooting on December 11.

We conclude the jury's verdict was not contrary to the weight of the evidence. Brown's statements and actions show he was the person who shot Craft. This evidence was corroborated by the testimony of T.G., D.G., D.G.'s girlfriend, and T.G.'s girlfriend. We find the district court did not abuse its discretion by denying Brown's motion for a new trial.

## V.     Sentencing

The court sentenced Brown to life in prison on the charge of first-degree murder and a term of imprisonment not to exceed twenty-five years on the charge of first-degree robbery, to be served consecutively. Brown claims the court abused its discretion by imposing consecutive sentences.

"Appellate review of the district court's sentencing decision is for an abuse of discretion." *State v. Evans*, 672 N.W.2d 328, 331 (Iowa 2003). A court's sentencing decisions "are cloaked with a strong presumption in their favor." *State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996). "A defendant therefore has the

burden to provide a record showing that the court abused its discretion." *State v. Crooks*, 911 N.W.2d 153, 171 (Iowa 2018) (citation omitted).

Brown claims the court did not give adequate reasons for imposing consecutive sentences. He asserts that the court only considered the nature of the offense. Brown points out that the offenses arose out of the same sequence of events and states the court should have imposed concurrent rather than consecutive sentences.

"The sentencing judge must . . . give reasons for imposing consecutive sentences." *Evans*, 672 N.W.2d at 331–32. "Although the reasons do not need to be detailed, they must be sufficient to allow appellate review of the discretionary action." *Id.* at 331. The sentencing court may not focus on the nature of the offense alone in determining the appropriate punishment. *State v. Hopkins*, 860 N.W.2d 550, 555 (Iowa 2015).

At the sentencing hearing, the court stated:

> I do find that consecutive sentences, as recommended by the State, are appropriate, because both crimes are serious and because of the nature and circumstances of the offense.
> I do not find it appropriate for there to be one sentence for a robbery and murder when you made the plans to commit the robbery in the first degree and then, during the course of the commission of that crime, there's a murder that results.
> And at least from the evidence in the record, it wasn't—as the victim said, he would have given you guys whatever you demanded. The murder was in addition to the robbery. It was gratuitous. And as more than one person has said, it was done for nothing. Consecutive sentences are appropriate because of the nature and circumstances of the offenses. That's supported by the evidence and the particular facts of this case.

The sentencing order states:

> The reasons for the sentences were stated on the record. Consecutive prison sentences are appropriate due to the severity of

the crimes. Defendant's lack of remorse and lack of acceptance of responsibility, the commission of murder in addition to the commission of the planned robbery involving the use of a firearm, the impact of the crimes upon the victims and the community, and the threat posed by Defendant to the community.

The court did not rely on the nature of the offense alone. *See id.* In the sentencing order, the court gave several reasons for imposing consecutive sentences, including Brown's lack of remorse, the impact on the community, and the threat Brown poses to the community. At the sentencing hearing, the court noted "the particular facts of this case." We conclude the court gave adequate reasons for sentencing Brown to consecutive sentences. We find the court did not abuse its discretion in sentencing Brown.

We affirm Brown's convictions and sentences.

**AFFIRMED.**