# IN THE COURT OF APPEALS OF IOWA

No. 24-1975
Filed March 11, 2026

**State of Iowa,**
Plaintiff–Appellee,

v.

**James David Smith,**
Defendant–Appellant.

Appeal from the Iowa District Court for Linn County,
The Honorable Valerie L. Clay, Judge.

**AFFIRMED**

Webb L. Wassmer (argued) of Wassmer Law Office, PLC, Marion, attorney
for appellant.

Brenna Bird, Attorney General, and Zachary Miller (argued), Assistant
Attorney General, attorneys for appellee.

Heard at oral argument
by Tabor, C.J., and Greer, Schumacher, and Sandy, JJ., but decided by
Tabor, C.J., and Greer, Schumacher, Badding, and Sandy, JJ.
Opinion by Sandy, J. Special Concurrence by Tabor, C.J.

**SANDY, Judge.**

The Constitution forbids race from influencing the composition of a jury. But it does not forbid advocates from making difficult judgments about which jurors they prefer to serve on a panel. The question here is whether the State's peremptory strike of Juror V.W. was based on the former or the latter.

The State charged James David Smith with domestic abuse assault strangulation causing bodily injury (count I) and domestic abuse assault causing bodily injury (count II). Following a multi-day jury trial, the jury returned verdicts finding Smith guilty of the lesser-included offense of domestic abuse assault on count I and guilty as charged on count II. Smith contests the district court's rejection of his *Batson* challenge to the State's peremptory strike of Juror V.W.

## BACKGROUND FACTS AND PROCEDURE

This case arose from an incident on December 21, 2023, involving Smith and N.C., the mother of one of his children. Evidence at trial established that Smith went to N.C.'s home in Marion, Iowa, where the two spent the evening drinking. A disagreement developed after N.C. overheard Smith speaking with another woman on the phone. According to N.C.'s account—refreshed in part through her written statement, a 911 recording, and body-camera footage—an altercation followed in which she reported being strangled near the kitchen sink and having her head struck against a pantry area. She acknowledged confusion about portions of the night due to intoxication but maintained that the refreshed materials allowed her to recall certain details of the assault.

Police officers who responded shortly after the report did not locate Smith at the scene, and N.C. later referenced telephone calls from Smith in which he apologized, though he continued to deny any physical assault. Smith testified that he had limited memory of the evening due to alcohol consumption. He stated that after N.C. took his phone during an argument, he followed her to recover it but denied assaulting her, choking her, or causing any injuries. He reported leaving the residence shortly thereafter and contacting his mother before walking to a gas station.

The jury received competing accounts that supported some elements of both witnesses' narratives. It ultimately returned verdicts finding Smith guilty of the lesser-included offense of domestic abuse assault, a simple misdemeanor, on count I and guilty as charged on count II—domestic abuse assault causing bodily injury.

An issue raised during voir dire involved the State's use of peremptory challenges. The prosecutor struck two prospective jurors identified as racial minorities: V.W. and S.H. Defense counsel challenged both strikes under *Batson v. Kentucky*, arguing they were racially motivated. *See* 476 U.S. 79, 89 (1986). In response, the prosecutor explained that V.W. was struck because she "couldn't understand [V.W.] when he spoke," noting that his answers were difficult to hear and largely unclear except for his statement that he had never been required to judge someone's credibility. The prosecutor also offered a separate reason for striking the second juror, S.H., stating that she nodded off twice and expressed no experience assessing credibility. Defense counsel maintained that both strikes were racially discriminatory.

After hearing both positions, the district court stated that it too had difficulty understanding V.W. and had observed S.H. appearing to fall asleep.

The court found the State's explanations race-neutral and overruled the *Batson* challenge.

Following trial, the district court denied Smith's motion for new trial, noted that he withdrew his motion in arrest of judgment, and imposed concurrent jail sentences of ten days and thirty days. The court also ordered financial obligations, including fines, surcharges, court costs, and restitution, and required Smith to complete the Iowa Domestic Abuse Program.

Smith appeals. His appeal challenges only the district court's rejection of his *Batson* objection to the State's peremptory strike of Juror V.W.

## STANDARD OF REVIEW

*Batson* challenges are reviewed de novo. *See State v. Veal*, 930 N.W.2d 319, 327 (Iowa 2019); *Valdez v. W. Des Moines Cmty. Schs.*, 992 N.W.2d 613, 622 (Iowa 2023). But we should give "a great deal of deference to the district court's evaluation of credibility when determining the true motives of the attorney when making strikes." *State v. Mootz*, 808 N.W.2d 207, 214 (Iowa 2012).

## DISCUSSION

Analyzing Smith's *Batson* challenge involves a three-step inquiry: (1) Smith must establish a prima facie case of purposeful racial discrimination in the State's peremptory strike; (2) the State must offer a race-neutral explanation for the strike; and (3) Smith must carry the ultimate burden of proving purposeful discrimination. *See Valdez*, 992 N.W.2d at 622 (citation omitted). "We conduct a de novo review of the record when making this inquiry, but at step three, we give a great deal of deference to the district court's evaluation of credibility when determining the true motives of the

4

attorney who made the strike." *State v. Booker*, 989 N.W.2d 621, 627 (Iowa 2023) (cleaned up).

"Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Mootz*, 808 N.W.2d at 218 (*quoting Hernandez v. New York*, 500 U.S. 352, 359 (1991)).

The prosecutor and V.W. had the following exchange:

State: What about you, Mr. [W]?

V.W.: [W] (pronouncing.)

State: Yes. Have you been in a situation or tasked with judging the credibility of something somebody says?

V.W.: No.

State: No? Never?

V.W.: Never.

State: Do you have kids?

V.W.: Yes.

State: Do they ever tell you something you're not quite sure you believe?

V.W.: Yes, sometimes.

State: And how do you determine when your kids talk to you whether or not you should believe everything they tell you?

V.W.: I mean, I take one of them, and at the end, they care for each other, and they say their thoughts.

State: Okay. Do you think that you can listen to a stranger and determine if they're telling the truth?

V.W.: Yes.

State: Do you think you are capable of that? Okay.

The prosecutor struck V.W. using a peremptory strike, and Smith raised a *Batson* challenge. The prosecutor's proffered reason for striking V.W. was, "I couldn't understand him when he spoke. I could not hear him, he stated that—the only thing I understood him saying is that he has not had to determine someone's credibility and the rest was very, very unclear to me."

When ruling on the *Batson* challenge, the district court stated, "Well, certainly the Court also had concerns with being able to understand [V.W.] . . . ." The district court held the prosecutor's basis for striking V.W. was race neutral, denying Smith's *Batson* challenge and allowing the prosecutor's strike to stand. Because the district court ruled on the ultimate question of purposeful discrimination after the prosecutor offered a race-neutral explanation for the strike, the issue of whether Smith made a prima facie case of purposeful racial discrimination is moot. *See Mootz*, 808 N.W.2d at 218.

The State offered a race-neutral justification for its strike—the juror not understanding the English language. And "[a]t this step of the inquiry, the issue is the facial validity of the [attorney's] explanation. Unless a discriminatory intent is inherent in the [attorney's] explanation, the reason offered will be deemed race neutral." *Booker*, 989 N.W.2d at 629 (citation omitted). This step "is extremely deferential to the party seeking to strike the juror." *Mootz*, 808 N.W.2d at 218. "A proffered justification need not rise to the level justifying exercise of a challenge for cause but must be race-neutral and related to the particular case to be tried." *Valdez*, 992 N.W.2d at 623. (cleaned up). The justification given "need not be persuasive, or even

6

plausible at this stage." *Id.* (cleaned up). "It is not until step three that the persuasiveness of the justification becomes relevant." *Id.* (cleaned up).

It is unclear from the record the reason the prosecutor was unable to understand V.W. But we have held that having difficulty understanding a juror due to a language barrier is a valid race-neutral explanation for striking a potential juror. *State v. Kirk*, No. 10-0853, 2011 WL 768761, at *3 (Iowa Ct. App. Mar. 7, 2011).

Several other jurisdictions agree that when it is evident a juror is having trouble understanding proceedings because of a language barrier, a party may strike that juror without violating *Batson*. *See United States v. Changco*, 1 F.3d 837, 840 (9th Cir. 1993) ("So long as the [attorney] . . . can convince the district court that the potential juror who is being struck *in fact* has difficulty with English, the justification is race-neutral."); *United States v. Alvarado*, 951 F.2d 22, 25 (2d Cir. 1991) (holding that "some arguable language difficulty reflected in a portion of [a juror's] voir dire responses" was a race-neutral reason to strike the potential juror, but such inquiries are heavily fact dependent and deference to the trial judge is especially appropriate); *State v. Wren*, 738 N.W.2d 378, 389 (Minn. 2007) (affirming a district court's denial of a *Batson* challenge when the district court did not believe that a prospective juror "exhibited fluency or understanding when he gave his responses," "was concerned by complex questions," and "was having some communication problems"); *see also Pagan v. State*, 29 So.3d 938, 958 (Fla. 2009) ("While a juror cannot be excluded on the basis of not speaking English well, the juror can be excluded based on his or her inability to understand English.").

Given the significant deference we afford the party seeking to strike the potential juror at this step, we accept the prosecutor's justification for

striking V.W. as race neutral. *See Mootz*, 808 N.W.2d at 218. The prosecutor's reasoning that she was having difficulty understanding V.W. is a race-neutral explanation on its face, as it does not call in to question V.W.'s race, only his ability to understand the proceedings.

We make clear that while the prosecutor's proffered reason to strike V.W. (difficulty understanding the potential juror) is a race-neutral justification, this may not necessarily be the case for striking a potential juror for speaking with an accent or speaking English as a second language. *See People v. Morales*, 719 N.E.2d 261, 270–71 (Ill. App. Ct. 1999) (striking a potential juror based on his accent was pretextual when the potential juror gave no indication that he had trouble understanding English; only that he spoke with an accent). There is a difference between a juror being "difficult to understand" because the line of logic in his responses is difficult to follow and "difficult to understand" because he does not talk like a native speaker.

Step three of the *Batson* inquiry requires us to "decide whether to believe the [attorney's] explanation for the peremptory challenges, or whether the reasons given are merely pretext for racial discrimination." *Booker*, 989 N.W.2d at 630 (cleaned up). "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Mootz*, 808 N.W.2d at 219 (citation omitted) "Because the trial judge's finding whether purposeful discrimination exists will largely turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Booker*, 989 N.W.2d at 630 (citation omitted); *State v. Knox*, 464 N.W.2d 445, 448 (Iowa 1990). "The ultimate inquiry is whether, under the totality of the circumstances, the strike was motivated in substantial part by discriminatory intent." *Booker*, 989 N.W.2d at 630 (cleaned up); *Flowers v. Mississippi*, 588 U.S. 284, 303 (2019).

Although we review the record de novo, we afford district courts considerable deference when ruling on *Batson* challenges. "[I]n a *Batson* challenge, the district court must be free to evaluate the credibility of evidence in determining whether a challenged strike was racially motivated." *Valdez*, 992 N.W.2d at 628. "The trial court has a pivotal role in evaluating *Batson* claims through its evaluation of the prosecutor's credibility in determining the ultimate issue of whether the strike was discriminatory." *Id.* (*quoting Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)) (cleaned up).

Smith contends on appeal that the record does not reflect that the prosecutor had difficulty understanding V.W., and that reasoning was used as pretext. Smith argues there is nothing demonstrating, or even suggesting, V.W. had any difficulty understanding English. Smith contends that the transcript does not indicate the court reporter or the defense attorney had any difficulty understanding V.W, and that V.W. appeared to understand and appropriately answer the prosecutor's questions. The problem is that Smith did not argue the above when he had the burden to articulate it—after the State's race-neutral justification.

As the opponent of the strike, Smith had the ultimate burden to show the prosecutor's reasoning was pretextual. *See Mootz*, 808 N.W.2d at 220. Smith's attorney did not ask any further questions of V.W. to determine whether the juror struggled to understand the proceedings. Smith's attorney did not attempt to rebut the proffered reason given by the prosecutor (e.g., if one existed, producing the juror questionnaire relative to the juror's understanding of the English language). The sparse record reflects the way the exchange was handled by all involved. Smith's attorney could have inquired further into whether V.W. was having difficulty understanding the proceedings following the State's race neutral explanation.

A longer, more in-depth exchange between the parties and V.W. would have been helpful. For example, *Kirk* shows a good example of how "[t]he prosecutor gave a clear and specific race-neutral explanation for the strike, the language barrier, after having had a *fairly lengthy exchange* with the juror about his understanding of English and having difficulty understanding the juror's remarks." 2011 WL 768761, at *3 (emphasis added). We do not have a "fairly lengthy exchange" between V.W. and counsel about the juror's ability to understand the proceedings. *See id.* Rather, we only have a questionable response by V.W. to a question asked by the prosecutor. We bemoan the fact no further inquiry was made and thus have a limited record as a result. But the ultimate burden of persuasion regarding racial motivation rests with Smith as the opponent of the strike. *See Mootz*, 808 N.W.2d at 220. And because little to no record was made here, Smith failed to carry that burden.

Viewing the totality of the circumstances, there is not sufficient evidence in the record to conclude the prosecutor's strike of V.W. was substantially motivated by discriminatory intent. The prosecutor stated she had a difficult time understanding the potential juror. The district court agreed with the prosecutor that it had a difficult time understanding what V.W. was saying, stating, "Well, certainly the Court also had concerns with being able to understand [V.W.] . . . ."

The prosecutor and V.W. had a brief exchange during jury selection. When discussing ability to determine credibility, the prosecutor asked, "And how do you determine when your kids talk to you whether or not you should believe everything they tell you?" V.W. answered by saying, "I mean, I take one of them, and at the end, they care for each other, and they say their thoughts."

This response from V.W. did not answer the question asked by the prosecutor about his ability to determine credibility. Instead, the response was somewhat a non sequitur, referencing how his children "care for each other," indicating possible failure to fully understand the premise and accurately answer the prosecutor's question. It also highlights why we afford so much deference to the district court in *Batson* challenges: determining whether purposeful discrimination exists turns largely on credibility evaluations. *Valdez*, 992 N.W.2d at 624–25. The district court stated on the record that it "also had concerns with being able to understand" V.W. and found the prosecutor's reasoning to be credible.

While we review the record de novo, we cannot provide Smith the remedy he seeks. The State proffered a race-neutral reason for striking V.W., and Smith's attorney declined to respond to the State's reasoning. Given the totality of the circumstances, Smith cannot prove the prosecutor's strike was motivated in substantial part by discriminatory intent.

**AFFIRMED.**

Schumacher and Badding, JJ., concur; Tabor, C.J., specially concurs with Greer and Sandy, JJ., joining.

11

**TABOR, Chief Judge** (specially concurring).

"I couldn't understand him when he spoke." That bare assertion met the prosecutor's burden of production under *Batson*. It was a race neutral reason for striking African-American juror V.W.[1] But that reason may not have withstood scrutiny if Smith's trial counsel had offered an argument that the language concern was a pretext for discrimination based on race or national origin. "To be sure, there is nuance to the question of whether accent-based peremptory strikes are permissible." *United States v. Parada*, 134 F.4th 188, 202 (4th Cir. 2025).

I write separately to emphasize that Iowa attorneys do not enjoy free rein to exercise peremptory strikes against any prospective juror who does not speak perfect English. As another court cautioned,

> our opinion should not be read to preclude the possibility that English language proficiency or an accent indicative of being a nonnative speaker could serve as a proxy or pretext for unlawful discrimination on the basis of ancestry, national origin, or race in another context, particularly where the exclusion is made "without regard to the particular circumstances of the trial or the individual responses of the jurors."

*State v. Gould*, 142 A.3d 253, 262–63 (Conn. 2016) (citation omitted). Our opinion today is limited by trial counsel's decision not to engage in the third step of the *Batson* analysis.

---

[1] The second step of the *Batson* analysis does not require a persuasive explanation, only one that is facially valid. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Id.* (citation omitted). "It is not until the *third* step that the persuasiveness of the justification becomes relevant," and "implausible or fantastic justifications may . . . be found to be pretexts for purposeful discrimination." *Id.*

Smith's appellate counsel urges that, given our de novo review, we can decide the prosecutor's reason was pretextual because the transcript shows that the court reporter did not have trouble understanding V.W.'s responses in jury selection. And "V.W. appeared to understand and appropriately answer the few questions he was asked by counsel for the State." Those facts strike me as true.[2] But our de novo review is not a substitute for error preservation. *Weltzin v. Nail*, 618 N.W.2d 293, 296 (Iowa 2000) ("While de novo review allows the appellate court to consider the facts and issues in their entirety, the court can only review issues properly preserved."). On this record, I agree with the majority that we cannot grant Smith relief.

Greer and Sandy, JJ., join this special concurrence.

---

[2] I disagree with the majority's view that V.W.'s response to the prosecutor's question was "somewhat a non sequitur." While V.W.'s description of how he determines whether his children are telling the truth may have been imprecise, it was responsive. What's more, the State did not address the substance of V.W.'s answer when lodging its race neutral reason.